**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| KENNETH ALBRECHT, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff | ) **CASE NO. 1:18-cv-1061** ) |
| vs. | ) The Honorable Harry D. Leinenweber ) |
| OASIS POWER, LLC d/b/a OASIS ENERGY, | ) **JURY TRIAL DEMANDED** ) |
| Defendant. | ) ) |
| | ) |

## FIRST AMENDED CLASS ACTION COMPLAINT[1]

Plaintiff Kenneth Albrecht ("Plaintiff"), files this First Amended Class Action Complaint against Defendant Oasis Power, LLC d/b/a Oasis Energy ("Defendant"), and alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## NATURE OF THE ACTION

1.      Defendant is a supplier of electricity and natural gas to residential and business customers in deregulated energy markets.[2]   Defendant primarily operates in the following deregulated energy markets: Illinois, Maryland, Massachusetts, New Jersey, and Pennsylvania.[3]

---

[1] On April 16, 2018, Defendant filed a Motion to Dismiss Plaintiff's Complaint ("Motion to Dismiss") pursuant to Federal Rule of Civil Procedure 12(b)(1).  [ECF No. 27].  Pursuant to Fed. R. Civ. P. 15(a)(1), Plaintiff hereby amends his complaint as a matter of course.

[2] Oasis Energy, https://oasisenergy.com/ (last visited Feb. 12, 2018).

[3] *Id.* at https://oasisenergy.com/service-area/ (last visited Feb. 12, 2018).

736288.1

2.     Deregulated energy markets work by "unbundling" the supply and delivery of energy to consumers.  Instead of a local utility acting in the single role of supplying and delivering energy to consumers, companies like Defendant are permitted to compete to supply energy services to consumers, while the delivery of energy remains with the local utilities.

3.     In other words, Defendant acts as a "middleman" between consumers and utility companies, promising consumers better rates for their energy supply needs.

4.     Energy deregulation was meant to foster competition and benefit consumers.

5.     Instead, companies like Defendant, seeking to maximize their own profits, rely on aggressive marketing techniques to sign-up new customers.

6.     Defendant's aggressive marketing techniques include the automated/pre-recorded telemarketing calls at issue in this case.

7.     Specifically, in an effort to market its products and services, Defendant knowingly and willfully violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, ("TCPA") and the Automatic Telephone Dialers Act, 815 ILCS 305/1, *et seq.* ("ATDA"), by making unsolicited prerecorded telemarketing calls[4] in violation of consumers' privacy rights.

8.     Defendant knew that it was prohibited by the TCPA from contacting consumers on their cellular telephones with prerecorded calls, without their prior express consent.

---

[4] The term "call" is not defined by the TCPA.  *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953 (9th Cir. 2009).  "Webster's defines 'call' . . . as 'to communicate with or try to get into communication with a person by a telephone.'"  *Id.* at 953-54 (citing *Webster's Third New International Dictionary* 318 (2002)).

9.      Nevertheless, in a failed attempt to circumvent the TCPA, Defendant did just that by utilizing "ringless"[5] voicemail technology to place prerecorded calls to Plaintiff and members of the Class (defined below) to promote its energy services.

10.     The self-proclaimed inventor of the type of technology utilized by Defendant – Stratics Networks, Inc. ("Stratics") – not only flaunts the ability of its technology to invade the privacy of consumers, but also consumers' inability to stop the invasion of privacy caused thereby, on its website:[6]



## Nobody Is Unreachable
## The Ringless Voicemail Drops Revolution Has Arrived!

11.     Neither Plaintiff nor Class Members ever consented in writing, authorized, desired, or permitted Defendant to make the calls alleged herein to their wireless telephones.

12.     By making such unauthorized calls, Defendant caused Plaintiff and Class Members actual harm, including the aggravation, nuisance, intrusion upon seclusion, and invasion of their privacy.

13.     Through this action, Plaintiff seeks to hold Defendant accountable for its flagrant violations of the TCPA, and for willfully and knowingly violating the privacy of thousands of consumers.

---

[5] The term "ringless" was self-servingly coined by companies that peddle this technology, and is simply false. It is common knowledge that every cellular telephone audibly alerts a consumer when a voicemail is received.

[6] *See* Statistics Networks, https://straticsnetworks.com/ringless-voicemail-drops (last visited Dec. 7, 2017).

736288.1

14.     Plaintiff, for himself and a Class of similarly situated individuals, seeks injunctive relief to halt Defendant's unlawful conduct.  Plaintiff also seeks statutory damages on behalf of himself and members of the Class, and any other legal or equitable remedies to redress Defendant's violations of the TCPA.

## JURISDICTION AND VENUE

15.     This Court has original jurisdiction over Count I pursuant to 28 U.S.C. § 1331 because Count I arises under the laws of the United States.

16.     This Court has supplemental jurisdiction over Count II pursuant to 28 U.S.C. § 1367 because Counts I and II arise out of a common nucleus of operative facts.

17.     This Court has personal jurisdiction over Defendant under the Illinois Long Arm Statute, 735 ILCS 5/2-209, because Defendant transacts business and committed a tortious act within the state of Illinois, and because Defendant conducts and carries on business within the state of Illinois. Further, by engaging in solicitation activities within the state of Illinois, Defendant has subjected itself to the personal jurisdiction of this State.

18.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this action occurred in this District

## PARTIES

19.     Plaintiff is an individual domiciled in Cook County, Illinois.

20.     Plaintiff is the regular carrier and user of his wireless telephone, which is assigned to a wireless telephone service provided by Sprint Corporation.

21.     Oasis Energy is a limited liability company organized in and existing under the laws of the State of Texas, with its principal place of business located at 12140 Wickchester Lane, Suite 100, Houston, Texas 77079.

736288.1

22. Oasis Energy maintains a registered agent for service of process with CT Corporation System, located at 208 S. LaSalle Street, Suite 814, Chicago, 60604.

## THE TCPA

23. The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system or an artificial or prerecorded voice; (3) without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A).

24. Accordingly, the TCPA exists to prevent communications like the ones made by Defendant that are at issue in this Complaint. "Voluminous consumer complaints about abuses of telephone technology—for example, computerized calls dispatched to private homes—prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 370-71 (2012).

25. In an action under the TCPA, a plaintiff must only show that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

26. The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA. According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, 18 FCC Rcd. 14014, 14115 (FCC July 3, 2003) ("*Rules & Regulations I*").

27. In 2012, the FCC issued an order tightening the restrictions for automated telemarketing calls, requiring "prior express ***written*** consent" for such calls to wireless numbers.

736288.1

*See In re of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, 27 FCC Rcd. 1830, 1838 (FCC Feb. 15, 2012) (emphasis supplied).

28.     To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent….and having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates." *Id. at* 1837-38, 1844, 1857-58.

29.     The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12). In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication. *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

30.     "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" *Id*. (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

31.     "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." *Golan*, 788 F.3d at 820 (citing 47 C.F.R. §§ 64.1200(a)(2)(iii) and (f)(12); *Rules & Regulations I*, 18 FCC Rcd. at 14098.

32.     The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA. *See id.* at 14097-99. This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call *or in the future*. *Id*.

33.    In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. *See id.* at 14097.

34.    If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *See In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-2778, 30 FCC Rcd. 7961, 7991-92 (FCC June 18, 2015) ("*Rules & Regulations II*") (requiring express consent "for non-telemarketing and non-advertising calls").

35.    As recently held by the United States Court of Appeals for the Ninth Circuit: "Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA 'need not allege any ***additional*** harm beyond the one Congress has identified.'" *Van Patten v. Vertical Fitness Grp.*, 847 F.3d 1037, 1043 (9th Cir. 2017) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) (emphasis in original)).

## FACTS

### "Ringless" Voicemails are Regulated by the TCPA

36.    "Ringless" voicemail technology was created, and is presently being used by unscrupulous companies, including Defendant, in an attempt to circumvent the TCPA.

37.    Unfortunately for Defendant, "ringless" voicemails are regulated by the TCPA and it is liable under the TCPA for invading consumers' privacy rights by utilizing such technology when engaging in its telemarketing practices.

38.    "Ringless" voicemail technology works by delivering prerecorded messages *en masse* to the voicemail boxes of cellular subscribers.

736288.1

39. However, calls made by utilizing this technology are not actually "ringless" since the prerecorded message that results triggers an audible notification to the consumer once the message is received.

40. Further, the method by which "ringless" voicemails are transmitted to cellular telephones is essentially the same as the method for transmitting text messages to cellular phones. This is significant because consumers are entitled to the same consent-based protections for text messages as they are for voice calls to wireless numbers. *See Satterfield*, 569 F.3d at 952 (noting that the FCC has determined that a text message falls within the meaning of "to make any call" in 47 U.S.C. § 227(b)(1)(A)); *Toney v. Quality Res., Inc*., 75 F. Supp. 3d 727, 734 (N.D. Ill. 2014) (holding that defendant bears the burden of showing that it obtained plaintiff's prior express consent before sending her a text message).

41. As illustrated below, "ringless" voicemails, including the prerecorded messages at issue in this case, are delivered just like text messages by "establishing a direct Internet-based computer-to-computer data connection to the respective voicemails systems of the cellular carries. As part of the protocol for this data communication, subscribers' cellular telephone numbers are used to identify each voicemail box so that the pre-recorded voice messages are inserted into each voicemail box *en masse*."[7]

---

[7] Comments Opposing the Petition for Declaratory Ruling and Waiver by National Consumer Law Center, *In re Rules & Regulations Implementing the Tel. consumer Prot. Act of 1991*, CG Docket No. 02-278, DA 17-364 (FCC May 18, 2017) *available* at https://www.fcc.gov/ecfs/filing/105180243621422.





42. Unlike robocalls and text messages, however, consumers are left powerless to block "ringless" voicemails from being transmitted to their phones. Thus, a consumer's voicemail box could be rendered useless by just a handful of companies using the technology to market their businesses.

43. The purpose of a "ringless" voicemail is to communicate with or try to get into communication with a consumer through the consumer's cellular telephone.

736288.1

44. Indeed, it is precisely because consumers are unable to block "ringless" voicemails that Stratics, the company that claims to have invented the technology, advertises that "ringless" voicemails have the highest consumer connection rate over any other technology:[8]



**96%**

Voicemail Listen Rate

| | |
|---|---|
| Voicemail Listen Rate | 96% |
| SMS Advertisement Open Rate | 87% |
| Live Agent Call Listen Rate | 54% |
| Voice Broadcasting Listen Rate | 39% |
| Email Ad Open Rate | 23% |

45. The FCC has previously rejected the argument that technologies such as "ringless" voicemails are not regulated by the TCPA because they are not traditional "calls." Particularly, in the context of Internet-to-phone text messaging, which is essentially the same technology at issue in this case, the FCC has ruled:

> From the recipient's perspective, Internet-to-phone text messaging is functionally equivalent to phone-to-phone text messaging, which the Commission has already confirmed falls within the TCPA's protection. And the potential harm is identical to consumers; unwanted text messages pose the same cost and annoyance to consumers, regardless of whether they originate from a phone or the Internet. Finding otherwise—that merely adding a domain to the telephone number means the number has not been "dialed"—when the effect on the recipient is identical, would elevate form over substance, thwart Congressional intent that evolving technologies not deprive mobile consumers of the TCPA's protections, and potentially open a floodgate of unwanted text messages to wireless consumers.[9]

---

[8] *See* Stratics Network, https://straticsnetworks.com/ringless-voicemail-drops/ (last visited April 19, 2018).

[9] *See Rules & Regulations II*, 30 FCC Rcd. at 8020.

736288.1

46.     Tellingly, Stratics itself admits and warns that the TCPA regulates this type of telemarketing technology:[10]

**Are Ringless Voicemails exempt from all the FCC rules?**

No, they are not, and Stratics Networks takes the approach that Ringless Voicemail Drops must be used responsibly at ALL times. Although voicemail technology is not regulated the same way as, say, a robocall there are ALWAYS rules that must be followed when using RVM.

**Are Ringless Voicemail Drops exempt from all TCPA rules?**

No, they are not, and Stratics Networks takes the approach that Ringless Voicemail Drops must be used responsibly at ALL times. Although voicemail technology is not regulated by TCPA the same way as, say, a robocall there are ALWAYS rules that must be followed when using RVM.
The TCPA also has several rules in place governing the content of voicemail messages.

**Can Ringless Voicemail Drops protect you from lawsuits?**

No, people can sue you for anything, so it is very important to use Ringless Voicemail Drops responsibly at ALL times. This includes, but is not limited to, scrubbing messages against the NDNC list, providing an opportunity for people to opt-out of future messages and always clearly identifying yourself when leaving a voicemail.

**Do Ringless Voicemail Drops have any rules associated with them?**

Yes, it is very important to use Ringless Voicemail Drops responsibly at ALL times. This includes, but is not limited to, scrubbing messages against the NDNC list, providing a opportunity for people to opt-out of future messages and always clearly identifying yourself when leaving a voicemail.

### Failed FCC "Ringless" Voicemail Petition

47.     On January 9, 2017, a putative class action lawsuit under the TCPA was filed against TT of Pine Ridge, Inc., ("TT of Pine Ridge") a vehicle dealership located in Naples, Florida, styled *Mahoney v. TT of Pine Ridge, Inc.*, Case No. 9:17-cv-80029-DMM (S.D. Fla. 2017) ("*Mahoney*").

48.     At issue in *Mahoney* was the use of Stratics' voicemail platform by TT of Pine Ridge to promote its dealership's inventory and related services. [*See id.* at ECF No. 1].

49.     On March 31, 2017, All About the Message, LLC, a distributor for Stratics' ringless voicemail platform, filed a Petition for Declaratory Ruling with the FCC seeking a declaration that the TCPA does not apply to "ringless" voicemails (the "FCC RVM Petition"). The FCC RVM Petition appears to have been initiated and/or coordinated by TT of Pine Ridge as a Motion for

---

[10] *See* Stratics Networks, Ringless Voicemail Drops FAQ, https://straticsnetworks.com/faq-for-ringless-voicemail-drops-by-stratics-networks (last visited Dec. 7, 2017).

Stay pending resolution of the FCC RVM Petition was filed on the same day by TT of Pine Ridge in the *Mahoney* lawsuit. [*See id.* at ECF No. 33].

50.     The FCC RVM Petition received significant media attention,[11] and fierce opposition from members of Congress, State Attorney Generals, and consumer protection groups, including the National Consumer Law Center.

51.     For example, several members of Congress wrote a letter to the Chairman of the FCC describing "ringless" voicemails as "a clear-cut attempt at an end-run around legal and technological protections against spam and unwanted phone communications."[12]

52.     Similarly, the Attorneys General for Massachusetts, New York, and Kentucky filed an opposition to the FCC RVM Petition stating in pertinent part:

> Ringless voicemails are prerecorded calls within the meaning of the TCPA. All About the Message seeks to avoid this conclusion by stating that ringless voicemail "bypasses the wireless telephone and telephone subscriber altogether," and by narrowly construing its conduct to include only the delivery of the voicemail message to a server and not to the consumer. This is a distinction without a difference.[13]

---

[11] *See, e.g.*, Sarah Shemkus, *You can sound off to the FCC about 'ringless voice mail'*, BOSTON GLOBE (May 24, 2017), https://www.bostonglobe.com/business/2017/05/24/you-can-sound-off-fcc-about-ringless-voicemail/buOKWDgr06Fxb1m0qk2ZCK/story.html and Tara Siegel Bernard, *No, Your Phone Didn't Ring. So Why Voice Mail From a Telemarketer?* NY TIMES (June 3, 2017), https://www.nytimes.com/2017/06/03/business/phone-ringless-voicemail-fcc-telemarketer.html.

[12] *See* Correspondence from Members of Congress to the Honorable Ajit Pai, Chairman, FCC (June 21, 2017) *available at* https://www.fcc.gov/ecfs/filing/1072811351675.

[13] Comments Opposing the Petition for Declaratory Ruling and Waiver by Massachusetts, New York, and Kentucky, *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278 (FCC June 2, 2017) *available* at https://www.fcc.gov/ecfs/filing/10602714924246.

53.     Ultimately, on June 20, 2017, the FCC RVM Petition was withdrawn after a class-wide settlement was reached in *Mahoney*, and the FCC did not issue a ruling with respect to the petition.

54.     Upon information and belief, Defendant was aware of the FCC RVM Petition and its withdrawal prior to sending the subject prerecorded telemarketing calls to Plaintiff and members of the Class.

### Defendant's Organizational Relationship and Notice of the TCPA

55.     Defendant is part of a conglomerate of limited liability companies all owned by Spark Energy, Inc.

56.     Spark Energy integrated Defendant into its operations on July 31, 2015.[14]

57.     According to public records of Defendant, Nathan Kroeker is the Chief Executive Officer, Robert Lane is the Chief Financial Officer, and Gil Melman is General Counsel for Defendant.

58.     Defendant operates as a subsidiary of Spark HoldCo, LLC.

59.     Spark HoldCo, LLC is a subsidiary of Spark Energy, Inc.

60.     Nathan Kroeker is also the Chief Executive Officer of Spark Energy, Inc.

61.     Robert Lane is also the Chief Financial Officer of Spark Energy, Inc.

62.     Spark Energy, Inc. is the sole managing member of Spark HoldCo, LLC and is responsible for all of its operational management and administrative decisions relating to Spark HoldCo, LLC's business, including business related to Oasis Energy.

---

[14] *See* Spark Energy, Inc., 2017 Form 10-K (Mar. 2, 2017), https://seekingalpha.com/filings/pdf/11905342.pdf (last visited Feb. 12, 2018).

63. Spark Energy, Inc. consolidates the financial results of Spark HoldCo and its subsidiaries, including Defendant.

64. Spark Energy and its related entities, including Defendant, engage in telemarketing activities and are aware of the potential liability to them based on their activities.

65. Indeed, another one of Spark Energy's subsidiaries, Major Energy Services, LLC, was sued in 2015 for making calls to wireless telephones to advertise its energy and power services.[15]

66. In its 2017 10-K filing, Spark Energy said the following of its operations, which includes Defendant:

> **_Liability under the TCPA has increased significantly in recent years and we faced risks if we fail to comply with the TCPA._**
>
> Our outbound telemarketing efforts and use of mobile messaging to communicate with our customers subjects us to regulation under the TCPA. Over the last several years, companies have been subject to significant liabilities as a result of violations of the TCPA, including penalties, fines and damages under class action lawsuits. In addition, the increased use by us and other consumer retailers of mobile messaging to communicate with our customers has created new issues of application of the TCPA to these communications. In 2015, the Federal Communications Commission issued several rulings that made compliance with the TCPA more difficult and costly. Specifically, the definition of "autodialer" and the treatment of calls to reassigned mobile numbers have made compliance more difficult and costly. Our failure to effectively monitor and comply with our activities that are subject to the TCPA could result in significant penalties and the adverse effects of having to defend and ultimately suffer liability in a class action lawsuit related to such non-compliance.

---

[15] _See Carrera v. Major Energy Services, LLC_, No. 3:15-cv-03208 (D.N.J.) (filed May 5, 2015; dismissed by settlement Feb. 3, 2017).

736288.1

We are also subject to liability under the TCPA for actions of our third party vendors who are engaging in outbound telemarketing efforts on our behalf.[16]

67.     Prior to making (or having made on its behalf) the calls alleged herein, Defendant was on notice of its obligations to comply with the TCPA and potential liability regarding illegal telemarketing activities

### Defendant's Calls to Plaintiff

68.     Starting in or around December 2017, Plaintiff received numerous calls to his wireless telephone from Defendant.

69.     On or about December 14, 2017, Plaintiff received a call to his wireless telephone from Defendant from the phone number (630) 358-6128.

70.     On or about December 22, 2017, Plaintiff received a call to his wireless telephone from Defendant from the phone number (630) 381-4055.

71.     On or about January 17, 2018, Plaintiff received a call to his wireless telephone from Defendant from the phone number (630) 381-4058.

72.     On or about January 17, 2018, Plaintiff received a call to his wireless telephone from Defendant from the phone number (630) 381-4066.

73.     Plaintiff did not recognize any of the phone numbers, *supra*, identified by his caller identification system.

74.     During these calls, Defendant delivered a prerecorded or artificial message lasting approximately 30 seconds to Plaintiff's wireless telephone that stated the call regarded electric

---

[16] *See* Spark Energy, Inc., 2017 Form 10-K (Mar. 2, 2017), https://seekingalpha.com/filings/pdf/11905342.pdf (last visited Feb. 12, 2018)

charges to Plaintiff's account and asked Plaintiff to call back with a copy of his statement so it can be reviewed

75.     The prerecorded telemarketing calls were transmitted to Plaintiff's cellular telephone, and within the time frame relevant to this action.

76.     Defendant's prerecorded telemarketing calls constitute telemarketing because they encouraged the future purchase or investment in Defendant's energy supply services.

77.     The prerecorded telemarketing calls originated from telephone numbers owned and/or operated by or on behalf of Defendant.

78.     Upon information and belief, Defendant made these prerecorded calls to Plaintiff and Class Members using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers.  The equipment also has the capacity to dial telephone numbers from a list of numbers without human intervention.

79.     Plaintiff received the subject prerecorded telemarketing calls within this District and, therefore, Defendant's violations of the TCPA and ATDA occurred within this District.  Upon information and belief, Defendant caused other prerecorded telemarketing calls to be sent to individuals residing within this judicial district.

80.     Indeed, consumers have reported similar unwanted calls from telephone number 630-358-6103:

- "It is complete scam. Asking for info on your utility bill to get your info and data. Stay away from this."[17]

---

[17] https://thisphone.us/6303586103 (last visited Feb. 12, 2018)

- "Gas bill scam call. Have your current account ready for review the caller (robocall; she) asks. An obvious attempt to switch your gas supplier without your consent. Beware!"[18]

81.     At no point in time did Plaintiff provide Defendant with his express consent to be contacted using an automatic telephone dialing system or prerecorded message.

82.     Plaintiff is the subscriber and/or sole user of the wireless number that received the subject calls.

83.     Defendant's unsolicited prerecorded calls caused Plaintiff actual harm, including invasion of his privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion. Defendant's prerecorded calls also inconvenienced Plaintiff and caused disruption to his daily life.

## CLASS ALLEGATIONS

### Proposed Classes

84.     Plaintiff brings Count I, as set forth below, on behalf of himself and as a class action, pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class defined as:

### TCPA Class

All individuals in the United States whose wireless telephone number Oasis Energy, or someone on its behalf, called using an automatic telephone dialing system or an artificial or prerecorded voice without prior express written consent of the called party.

Excluded from the TCPA Class are: Oasis Energy, its parent companies, subsidiaries, and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the judge to whom this case is assigned and any immediate family members thereof.

---

[18] https://800notes.com/Phone.aspx/1-630-358-6133 (last visited Feb. 12, 2018).

736288.1

85.     Plaintiff brings Count II, as set forth below, on behalf of himself and as a class action, pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class defined as

### ATDA Class

All persons in the state of Illinois who Oasis Energy, or someone on its behalf, called and played a prerecorded message placed by any device or system programmed to sequentially or randomly access stored telephone numbers to automatically connect a telephone with a recorded message.

Excluded from the ATDA Class are: Oasis Energy, its parent companies, subsidiaries, and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the judge to whom this case is assigned and any immediate family members thereof.

86.     "Class Members" or "the Class" refer to both the TCPA Class and the ATDA Class, unless otherwise stated.

87.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

### Numerosity

88.     Upon information and belief, Defendant has transmitted prerecorded telemarketing calls to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express written consent.  The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

89.     The exact number and identities of the Class members are unknown to Plaintiff at this time, but can be ascertained through discovery.  Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

736288.1

## Common Questions of Law and Fact

90.     There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class.  Among the questions of law and fact common to the Class are:

a.      The manner in which Defendant compiled and called the list of wireless telephone numbers, including Plaintiff's number;

b.      Whether Defendant, or someone on its behalf, was soliciting the sale of goods or services;

c.      Whether the equipment that Defendant, or someone on its behalf, used to make the calls in question involved the use of a prerecorded or artificial voice as contemplated by the TCPA;

d.      Whether Defendant's conduct constitutes a violation of the TCPA;

e.      Whether the equipment that Defendant, or someone on its behalf, used to make the calls in question was an autodialer as contemplated by the ATDA;

f.      Whether the equipment that Defendant, or someone on its behalf, used to make the calls in question involved a prerecorded message as contemplated by the ATDA;

g.      Whether Defendant's conduct constitutes a violation of the ATDA;

h.      Whether Plaintiff and Class Members are entitled to actual, statutory, or other forms of damages, and other monetary relief and, in what amount(s);

i.      Whether Plaintiff and the Class Members are entitled to treble damages under the TCPA based on the willfulness of Defendant's conduct; and

91.     The common questions in this case have common answers.  If Plaintiff's claim that Defendant routinely transmits prerecorded telemarketing calls to telephone numbers assigned to cellular telephone services is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

736288.1

**Typicality**

92.     Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

**Adequacy**

93.     Plaintiff is a representative who will fairly and adequately represent and protect the interests of the Class because he shares common interests with Class members as a result of Defendant's misconduct.

94.     In addition, Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, including those involving violations of the TCPA.  Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other respective members of the Class and have the financial resources to do so.  Neither Plaintiff nor his counsel have any interests adverse to those of the other members of the Class.

**Proceeding Via Class Action is Superior and Advisable**

95.     A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable.  While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits.  The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

96.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant.  For example, one court might enjoin Defendant from performing the challenged acts, whereas another

may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

## COUNT I

### Violations of the TCPA, 47 U.S.C. § 227(b)
### (On Behalf of Plaintiff and the TCPA Class)

97.    Plaintiff incorporates by reference paragraphs 1-95 as if fully set forth herein.

98.    It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service …." 47 U.S.C. § 227(b)(1)(A)(iii).

99.    Defendant – or third parties directed by Defendant – transmitted calls using an artificial or prerecorded voice to the cellular telephone numbers of Plaintiff and members of the Class.

100.    These calls were made without regard to whether Defendant had first obtained express permission from the called party to make such calls. In fact, Defendant did not have prior express consent to call the cell phones of Plaintiff and the other members of the Class when its calls were made.

101.    Defendant has, therefore, violated § 227(b)(1)(A)(iii) of the TCPA by using an artificial or prerecorded voice to make non-emergency telephone calls to the cell phones of Plaintiff and the other members of the Class without their prior express consent.

102.    As a result of Defendant's conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other members of the Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the class are also entitled to an injunction against future calls. *Id*.

103. Should the Court determine that Defendant's conduct was willful or knowing, the Court may, pursuant to section 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other Class members

## COUNT II

### Violation of the ATDA, 815 ILCS 305/1
### (On Behalf of Plaintiff and the ATDA Class)

104. Plaintiff incorporates by reference paragraphs 1-95 as if fully set forth herein.

105. Under the ATDA, it is unlawful to use an autodialer:

    a.    To place a telephone call during the hours between 9 p.m. and 9 a.m. *See* 815 ILCS 305/15(a); *see also* 815 ILCS 305/30(a) (a violation of § 15 is a violation of the ATDA);

    b.    To dial numbers determined by successively increasing or decreasing integers. *See* 815 ILCS 305/15(c); *see also* 815 ILCS 305/30(a) (a violation of § 15 is a violation of the ATDA);

    c.    In a manner that impedes the function of any caller ID when the caller's equipment is capable of allowing the display of the caller's number. *See* 815 ILCS 305/15(d); *see also* 815 ILCS 305/30(a) (a violation of § 15 is a violation of the ATDA); and

    d.    To play a prerecorded message. *See* 815 ILCS 305/30.

106. An "autodialer" is defined as "any telephone dialing or accessing device, machine, computer or system capable of storing telephone numbers which is programmed to sequentially or randomly access the stored telephone numbers in order to automatically connect a telephone with a recorded message." 815 ILCS 305/5.

107. "Recorded message" means "any taped communication soliciting the sale of goods or services without live voice interaction." *Id.*

108. Defendant and/or its agents made phone calls to the telephone numbers of Plaintiff and the other Class members *en masse* without their prior express consent.

109. Defendant made the calls, or had them made on its behalf, using equipment that is capable of storing telephone numbers which is programmed to sequentially or randomly access the stored telephone numbers in order to automatically connect a telephone with a recorded message

110. Defendant made the calls to solicit goods and/or services.

111. By making the calls to Plaintiff and the Class, Defendant violated the ATDA. As a result of Defendant's unlawful conduct, the Class Members suffered actual damages in the form of monies paid to receive the calls on their wireless phones and, under 815 ILCS 305/30, are each entitled to trebled actual damages, statutory damages in the amount of $500.00 per violation, costs, and reasonable attorneys' fees.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff Kenneth Albrecht, individually and on behalf of the Class, requests that the Court enter an Order as follows:

A.  Certifying the TCPA Class and ATDA Class, as defined above, appointing Plaintiff as the representative of the Class, and appointing his counsel as Class Counsel;

B.  Awarding of actual, statutory, and, if appropriate, treble damages;

C.  Requiring Oasis Energy, its agents, and its affiliates to cease all wireless phone call activities initiated without prior express written consent, and otherwise protecting the interests of the Class;

D.  Awarding of reasonable attorneys' fees and costs; and

E.  Awarding such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff and the Class members hereby demand a trial by jury.

736288.1

Date: April 20, 2018

Respectfully submitted,

**LITE DEPALMA GREENBERG, LLC**

*/s/ Katrina Carroll*
Katrina Carroll
kcarroll@litedepalma.com
Kyle Shamberg
kshamberg@litedepalma.com
Katlyn C. Mathy
kmathy@litedepalma.com
211 W. Wacker Drive,
Suite 500
Chicago, IL 60606
Phone No. (312) 750-1592
Fax No. (312) 212-5919

*Counsel for Plaintiff and the Class*

**HIRALDO P.A.**
Manuel S. Hiraldo
*Pro Hac Vice*
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, FL 33301
mhiraldo@hiraldolaw.com
Telephone: 954-400-4713

*Counsel for Plaintiff and the Class*

**SHAMIS & GENTILE, P.A.**
Andrew J. Shamis
*Pro Hac Vice*
ashamis@shamisgentile.com
14 NE 1st Avenue, Suite 400
Miami, FL 33132
Telephone: 305-479-2299
Fax: 786-623-0915

*Counsel for Plaintiff and the Class*

**KOPELOWITZ OSTROW**
Scott A Edelsberg
*Pro Hac Vice*
1 W. Las Olas Blvd.
Suite 500
Fort Lauderdale, FL 33301
(954) 525-4100
Email: edelsberg@kolawyers.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 20, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

By: *_/s/ Katrina Carroll_*
Katrina Carroll

736288.1