**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KENNETH ALBRECHT, on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| | ) | Case No. 1:18-cv-1061 |
| v. | ) ) | |
| | ) | Hon. Harry D. Leinenweber |
| OASIS POWER, LLC doing business as OASIS ENERGY, | ) ) ) | |
| Defendant. | ) | |

**PLAINTIFF'S UNOPPOSED MOTION FOR**
**PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**TABLE OF AUTHORITIES**

Cases

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
   No. 07 C 2898, 2011 WL 3290302 (N.D. Ill. July 26, 2011)......................................................18
*Amchem Prods. Inc. v. Windsor*,
   521 U.S. 591 (1997) ..................................................................................................................19, 24
*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*,
   616 F.2d 305 (7th Cir. 1980) .............................................................................................12, 13, 18
*Borcea v. Carnival Corp.*,
   238 F.R.D. 664 (S.D. Fla. 2006) .....................................................................................................17
*Fogarazzao v. Lehman Bros., Inc.*,
   232 F.R.D. 176 (S.D.N.Y. 2005)....................................................................................................21
*G.M. Sign, Inc. v. Brink's Mfg. Co.*,
   No. 09 C 5528, 2011 WL 248511 (N.D. Ill. Jan. 25, 2011) ...........................................................15
*Gen. Tel. Co. of the Sw. v. Falcon*,
   457 U.S. 147 (1982) .......................................................................................................................24
*Green v. Serv. Master On Location Servs. Corp.*,
   No. 07 C 4705, 2009 WL 1810769 (N.D. Ill. June 22, 2009) ......................................................15
*Harris v. Circuit City Stores, Inc.*,
   No. 07-cv-2512, 2008 WL 400862 (N.D. Ill. Feb. 7, 2008).........................................................25
*Hinton*,
   559 F.2d 1326 (5th Cir. 1977).......................................................................................................16
*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
   270 F.R.D. 330 (N.D. Ill. 2010) ...........................................................................................passim
*In re Capital One*,
   80 F. Supp. 3d.................................................................................................................................16
*In re Mexico Money Transfer Litig.*,
   164 F. Supp. 2d 1002 (N.D. Ill. 2000)..........................................................................................18
*In re Northfield*,
   2012 WL 366852 .............................................................................................................................27
*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
   30 F.C.C. Rcd. 7961 (F.C.C. 2015)..................................................................................................7
*In re Southwest Airlines Voucher Litig.*,
   No. 11-cv- 8176, 2013 WL 4510197 (N.D. Ill. Aug. 26, 2013)....................................................14
*In re Warner Commc'ns Sec. Litig.*,
   618 F. Supp. 735 (S.D.N.Y. 1985) ................................................................................................18
*Isby v. Bayh*,
   75 F.3d 1191 (7th Cir. 1996) .............................................................................................12, 13, 17
*Johansen v. GVN Michigan, Inc.*,
   No. 1:15-cv-00912, 2015 WL 3823036 (June 18, 2015)...............................................................23
*Kaye v. Amicus Mediation & Arbitration Group, Inc.*,
   300 F.R.D. 67 (D. Conn. 2014) .....................................................................................................24
*Kessler v. Am. Resorts International's Holiday Network, Ltd.*, No. 05 C,
   5944, 2007 WL 4105204 (N.D. Ill. Nov. 14, 2007) ......................................................................13

*Levy*,
  144 F.R.D. 690 (S.D. Fla. 1992) ............................................................................21
*Lucas v. Kmart Corp.*,
  234 F.R.D. 688 (D. Colo. 2006) ............................................................................18
*McCabe v. Crawford & Co.*,
  210 F.R.D. 631 (N.D. Ill. 2002) ............................................................................20
*McKinnie v. JP Morgan Chase Bank, N.A.*,
  678 F. Supp. 2d 806 (E.D. Wis. 2009) ..................................................................17
*Mims v. Arrow Fin. Servs., LLC*,
  565 U.S. 368 (2012) ..........................................................................................6, 7
*Mullane v. Cent. Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950) ............................................................................................26
*Parker v. Risk Mgmt. Alternatives, Inc.*,
  206 F.R.D. 211 (N.D. Ill. 2002) ............................................................................20
*Physicians Healthsource, Inc. v. A-S Medication Sols.*, LLC,
  318 F.R.D. 712 (N.D. Ill. 2016) ............................................................................15
*Reliable Money Order, Inc. v. McKnight Sales Co.*,
  704 F.3d 489 (7th Cir. 2013) ................................................................................25
*Roach v. T.L Cannon Corp.*,
  773 F.3d 401 (2d Cir. 2015) ................................................................................22
*Savanna Grp., Inc. v. Trynex, Inc.*,
  No. 10-CV-7995, 2013 WL 66181 ......................................................................15
*Schulte v. Fifth Third Bank*,
  805 F. Supp. 2d 560 (N.D. Ill. 2011) ..............................................................16, 17
*Schulte v. Fifth Third Bank*,
  No. 09-CV-6655, 2010 WL 8816289 (N.D. Ill. Sept. 10, 2010) ..........................16
*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
  463 F.3d 646 (7th Cir. 2006) ....................................................................13, 14, 18
*Versteeg v. Bennett, Deloney & Noyes, P.C.*,
  271 F.R.D. 668 (D. Wyo. 2011) ............................................................................15
*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011) ........................................................................................20
*Zyburo v. NCSPlus, Inc.*,
  44 F. Supp. 3d 500 (S.D.N.Y. 2014) ..............................................................15, 22

Statutes

28 U.S.C. § 1715 ......................................................................................................28
47 U.S.C. § 227 ..........................................................................................................5
47 U.S.C. § 227(b)(1)(A)–(B) ......................................................................................7
47 U.S.C. § 227(b)(3) ..................................................................................................7
Pub L. No. 102-243, § 2 (1991) ..................................................................................6
Section 227(b)(1)(B) ..................................................................................................7

Rules

Fed. R. Civ. P. 12(b)(1) ..............................................................................................8
Fed. R. Civ. P. 23(a)(1) ............................................................................................20

Fed. R. Civ. P. 23(a)(1)–(4) .................................................................................20
Fed. R. Civ. P. 23(a)(4) ...............................................................................21, 22
Fed. R. Civ. P. 23(c)(2)(B)(i)–(vii) .......................................................................26
Fed. R. Civ. P. 23(e)(1) .........................................................................................27
Fed. R. Civ. P. 23(e)(2) .........................................................................................13
Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv) ........................................................................25
Fed. R. Civ. P. 23(g)(1)(B), (2), (4) .......................................................................25
Fed. R. Civ. P. 30(b)(6) ...........................................................................................5
Rule 23 .............................................................................................................24, 25
Rule 23(a) ................................................................................................20, 21, 22
Rule 23(a)(2) ..........................................................................................................20
Rule 23(a)(3) ..........................................................................................................21
Rule 23(b)(1), (b)(2), or (b)(3) ..............................................................................25
**Rule 23(b)(3)** ................................................................................................22, 24
Rule 23(e)(1)(B) .....................................................................................................25
Rule 23(g) ..............................................................................................................25

Regulations

47 C.F.R. § 64.1200 ................................................................................................7
47 C.F.R. § 64.1200(a)(2) .......................................................................................7

Other Authorities

*G.M. Sign, Inc. v. Finish Thompson, Inc*., No. 07 C 5953,
    2009 U.S. Dist. LEXIS 73869, *12 (N.D. Ill. Aug. 20, 2009) ........................20
H. Newberg, A. Conte, Newberg on Class Actions § 11.41 (4th ed. 2002)........18
Manual for Complex Litigation § 21.632 (4th ed. 2004) ....................................19
*Sadowski v. Med1 Online, LLC*, No. 07 C 2973,
    2008 U.S. Dist. LEXIS 41766, *13 (N.D. Ill. May 27, 2008)........................23
Settlement Class. *See G.M. Sign,*
    2009 U.S. Dist. LEXIS 73869, at *15-16................................................22

iv

A. **INTRODUCTION**

The present case is a putative class action in which Plaintiff Kenneth Albrecht alleges Defendant Oasis Power, LLC and its related entities (collectively the "the Oasis Entities "[1]) transmitted prerecorded advertising messages to him and the Settlement Class Members' wireless telephone numbers without "prior express written consent" in alleged violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. The Complaint seeks statutory damages for Plaintiff and the Settlement Class.

The litigation to this point has been both in-depth and contentious. After Plaintiff amended his initial Complaint, Oasis moved to dismiss on Article III standing grounds, which the Court ultimately denied. In in the interim, the Parties entered into a stipulated confidentiality order and exchanged wide-ranging written and electronic discovery over the course of several months, on both individual merits and class certification- related issues. Plaintiff was deposed in his capacity as class representative, as was Oasis Power's corporate representative, Kira Jordan, pursuant to Fed. R. Civ. P. 30(b)(6). Plaintiff served subpoenas on third parties, from whom he obtained voluminous electronically-stored information, including call records regarding the advertising campaign at issue. The considerable time and resources Plaintiff and his counsel invested in this case afforded them the opportunity, in advance of ever discussing settlement with the Oasis Entities , to meaningfully assess the strength of the class claims and the risks posed by continued litigation.

The settlement negotiations were similarly hard fought. After nearly twelve hours of arms-

---

[1] These related entities are Spark Energy, LLC; Spark Energy Gas, LLC; Oasis Power, LLC; CenStar Energy Corp.; Electricity Maine, LLC; Electricity New Hampshire; Provider Power Mass; Major Energy Services; Major Energy Electricity Services LLC; Respond Power, LLC; Perigee Energy, LLC; Verde Energy USA, Inc.; Verde Energy USA Commodities, LLC; Verde Energy USA Pennsylvania, LLC; Verde Energy USA Texas Holdings, LLC; Verde Energy USA Trading, LLC; Verde Energy Solutions, LLC. Each of these entities is a Party to the Settlement Agreement. *See* **Exhibit A** (Settlement Agreement, hereinafter "SA").

1

length negotiations before the Hon. Michael Mason (Ret.), a well-respected and experienced JAMS mediator and former U.S. Magistrate Judge for the Northern District of Illinois, the Parties agreed upon the principal terms of the proposed Settlement, which they later memorialized in the Settlement Agreement.

The proposed Settlement provides substantial monetary and non-monetary relief to the Settlement Class, which is comprised of many thousands of individuals. As set forth in the Settlement Agreement, the Oasis Entities have agreed to establish a non-reversionary, all-cash Settlement Fund of **$7,000,000.00** (seven million dollars), from which all Settlement Class Members who submit a Valid Claim will receive a pro rata share (after Notice and Administration Costs and any Attorneys' Fee Award and Service Award authorized by the Court are deducted from the Settlement Fund). Taking into account the anticipated claims rate, and after deducting the estimated Notice and Administration Costs and the maximum Attorneys' Fee Award and Service Award that proposed Class Counsel would request from the Court (assuming those requests are made and granted), each Settlement Class Member who submits a Valid Claim will receive a Cash Award.

The Settlement Agreement designates Epiq Class Action & Claims Solutions, Inc. ("Epiq") as the Settlement Administrator to administer the Settlement Class Notice Program, under which the Class Notice will be provided via publication to the Settlement Class, satisfying due process and the requirements of Rule 23.

The Settlement represents an extraordinary result for the Settlement Class, both as compared to previous settlements in similar cases and given the considerable risk of either significantly circumscribed or total non-recovery posed by continued litigation. Accordingly, Plaintiff respectfully requests that the Court grant preliminary approval of the Settlement, certify the proposed Settlement Class, appoint Plaintiff as Class Representative and her counsel as Class

2

Counsel, approve the proposed Notice plan, and schedule a Fairness Hearing, as discussed in detail below.

**B.     BACKGROUND**

**A.     The TCPA's Ban on Unwanted, Prerecorded Voice Messages**

The TCPA is a consumer protection statute designed to combat the "intrusive invasion of privacy" caused by "[u]nrestricted telemarketing." *Mims v. Arrow Fin. Servs., LLC,* 565 U.S. 368, 372 (2012). In enacting the TCPA, Congress reported that "[m]any consumers are outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers." TCPA, Pub L. No. 102-243, § 2 (1991). "[R]egardless of the content or the initiator of the message," prerecorded telephone calls made to private residences, Congress found, were rightly regarded by recipients as "a nuisance and an invasion of privacy." *Id.* "Banning such . . . prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion." *Id.*

"Congress therefore put the responsibility for compliance with the [TCPA] directly on the party that 'makes' or 'initiates' automated and prerecorded message calls." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961, 7980 (F.C.C. 2015) (the "2015 FCC Order"). Specifically, among various limitations the TCPA imposes on telemarketers, is a ban on the use of prerecorded voice messages:

> It shall be unlawful for any person within the United States . . .
>
> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using . . . *prerecorded voice* . . . (iii) to any telephone number assigned to a . . . cellular telephone service . . .
>
> (B) to initiate any telephone call to any residential telephone line using . . . *prerecorded voice* to deliver a message without the prior express consent of the called party[.]

3

47 U.S.C. § 227(b)(1)(A)–(B) (emphasis supplied). Pursuant to Section 227(b)(1)(B), the FCC promulgated a comprehensive set of rules governing telemarketing and telephone solicitations. *See* 47 C.F.R. § 64.1200, *et seq.* They contain terms similar to—though more comprehensive than—the TCPA. For example, where 47 U.S.C. § 227(b)(1)(B) bars using prerecorded voice messages to "initiate any telephone call to any residential telephone line," 47 C.F.R. § 64.1200(a)(2) additionally bars "caus[ing]" such calls to be initiated.

The TCPA provides consumers with a private right of action to seek injunctive relief and a minimum of $500 in damages for each violation of the statute or FCC regulations. 47 U.S.C. § 227(b)(3). If the defendant knowingly or willfully violated the TCPA, the court has discretion to award treble damages. *Id.*

## B.    History of the Litigation and Discovery

Plaintiff filed his class action complaint in February 2018. ECF Doc. 1. After amending once as a matter of right, Defendant Oasis moved to dismiss the FAC, arguing that Plaintiff lacked standing under Fed. R. Civ. P. 12(b)(1) because he had not suffered any cognizable injury in fact from his receipt of ringless voicemails, and to stay discovery during that motion's pendency. ECF Docs. 31, 36. The Court soon thereafter denied the motion to stay, permitting discovery to proceed in the usual course. ECF Doc. 38.

The Court then denied the motion to dismiss in October 2018, ECF Doc. 48, finding that the TCPA "establishes substantive, not procedural, rights to be free from telemarketing calls consumers have not consented to receive," and both the "history and the judgment of Congress suggest that violation of this substantive right is sufficient to constitute a concrete, de facto injury." *Id.* The Court therefore concluded that Plaintiff's allegations of invasion of privacy, annoyance, and harassment were sufficient to establish standing under the TCPA. *Id.*

In the meantime, from May 2018 until June 2019, the Parties engaged in voluminous and

4

wide-ranging discovery, serving and responding to written discovery, meeting and conferring regarding same, deposing Defendant's 30(b)(6) representative and Plaintiff in his capacity as class representative, and serving multiple subpoenas on the third party entities that Defendant hired to conduct the marketing campaign as well as pursuing motions to compel those entities' noncompliance therewith. This discovery revealed that that the allegations asserted against Oasis applied to and were not distinguishable from various related entities, together referred to as the Oasis Entities, who together retained the same vendors to conduct send the alleged ringless voicemails at issue. *See* SA § 1.05.

### C. Settlement Discussions, Mediation and Confirmatory Discovery

In June 2019, the Parties agreed to attend private mediation in an attempt to resolve this case on behalf of the Settlement Class. The Parties proposed various different mediators and ultimately scheduled mediation for June 25, 2019 in Chicago, Illinois before the Hon. Michael Mason, a well-respected and experienced JAMS mediator and former U.S. Magistrate Judge for the Northern District of Illinois. The Parties exchanged confidential mediation statements thoroughly articulating their respective positions on each of the key legal issues relating to liability, class certification and damages exposure, and Plaintiff provided a proposed term sheet ahead of mediation.

At mediation, the Parties discussed their competing views on various issues, including the relief to which the Settlement Class is potentially entitled and the prospects of class certification and eventually began exchanging counterproposals on key aspects of the Settlement. The Parties' negotiations were at all times highly adversarial and at arm's length. After almost twelve hours of mediation, the Parties reached an agreement on the principal terms of the Settlement and signed a binding term sheet, which the Parties agreed would be used to memorialize the Settlement Agreement and select a Settlement Administrator.

## C.       TERMS OF THE SETTLEMENT

The Settlement Agreement contains the following key terms:

### A.       Class Definition

Pursuant to the Settlement Agreement, Plaintiff requests in this Motion that the Court provisionally certify the following Settlement Class: all individuals within the United States (i) who were sent a prerecorded message, also referred to a ringless voicemail (ii) on his or her telephone (iii) by or on behalf of the Oasis Entities advertising the Oasis Entities ' goods and services during the Class Period. Specifically excluded from the Settlement Class are the Oasis Entities and their affiliates, employees, officers, directors, agents, representatives and their immediate family members; class counsel and the judge and magistrate judge who have presided over the Action and their immediate family members. SA § 2.34.

### B.       Monetary Relief

the Oasis Entities have agreed to pay, on a non-reversionary basis, cash in the amount of $7,000,000.00 to create the Settlement Fund, for the benefit of Settlement Class Members, and which will be used to pay all Settlement costs, including without limitation the Cash Awards, Notice and Administrative Costs, any Attorneys' Fee Award and Service Award awarded by the Court, and will be in full satisfaction of all of the Oasis Entities ' monetary obligations under the Settlement and Settlement Agreement. *Id.* § 4.01.

After Notice and Administration Costs and any Attorneys' Fee Award and Service Award have been paid from the Settlement Fund, each Settlement Class Member who submits a Valid Claim will receive a pro rata share of the remainder of the Available Cash Award Total. *Id.* § 4.02; *see also id.* §§ 4.03-4.06 (timing of and process for payment distribution). Regardless of the number of Valid Claims submitted, no portion of the Settlement Fund shall be returned or refunded to the Oasis Entities . *Id.* § 4.05

C.      **Notice and Settlement Administration Costs**

the Oasis Entities  has agreed to pay from the Settlement Fund all Notice and Administration Costs to the Settlement Administrator.  *Id.* § 4.01. The Settlement Administrator estimates that the total Notice and Administration Costs will be approximately $934,000 (Azari Decl. ¶ 24.)  The form of the Class Notice and Claim Form, and information concerning the Settlement Class Notice Program, are discussed in detail below.

E.      **Service Award for Class Representative and Attorneys' Fees for Class Counsel**

the Oasis Entities have agreed to pay from the Settlement Fund, subject to Court approval, a reasonable Service Award to Plaintiff in recognition of the time and effort he expended in pursuing this action and in fulfilling his obligations and responsibilities as class representative. SA § 5.01.  The Oasis Entities have also agreed to pay from the Settlement Fund a reasonable Attorneys' Fee Award to proposed Class Counsel, as may be awarded by the Court.  *Id.* § 5.02

Plaintiff's counsel intends to make an application to the Court for a Service Award to Plaintiff in an amount not to exceed $7,500.00, and for an Attorneys' Fee Award in an amount not to exceed 33.33% of the Settlement Fund after all Notice and Administration Costs are first deducted, inclusive of costs expended by Plaintiff's counsel. The Settlement Agreement is not contingent on the amount of any Service Award or Attorneys' Fee Award.  SA § 5.03.

F.      **Objections and Opt-Out Rights**

Any Settlement Class Member who intends to object must do so on or before the Opt-Out and Objection Date, i.e., the date sixty (60) days after the Notice Date, as set forth in the proposed order accompanying this Motion.  *Id.* § 10.  Any attempted objection that fails to comply with the requirements set forth in Section 10 of the Settlement Agreement will be deemed by the Parties and the Settlement Administrator to be wholly ineffectual, null, and void. *Id.* In order to object, a

7

Settlement Class Member must timely file with the Court and timely serve copies on both Class Counsel and Defense Counsel a written objection containing all of the information set forth in Section 10 of the Settlement Agreement. *Id.* § 10.03

Any Settlement Class Member who wishes to opt out of the Settlement Class must complete and send to the Settlement Administrator a request for exclusion that is post-marked or submitted electronically no later than the Opt-Out and Objection Date, i.e., the date sixty (60) days after the Notice Date, as set forth in the proposed order accompanying this Motion. *Id.* § 10.01. The request for exclusion must comply with all of the requirements set forth in Section 10.01 of the Settlement Agreement. *Id.*

The Class Notice provided to the Settlement Class will contain language consistent with the provisions set forth in Section 10 of the Settlement Agreement concerning objections and opt-outs. *Id.*

## G.    Release of Liability

If the Settlement is finally approved and a Final Approval Order and Judgment entered by the Court, the Oasis Entities will be released and forever discharged, in exchange for the monetary relief described above, from any and all claims arising from or relating to allegedly unauthorized text messages sent by the Oasis Entities to members of the Settlement Class, except that no claims of Settlement Class Members who timely and properly request exclusion will be released. *Id.* § 11.03

## IV.    THE CLASS ACTION SETTLEMENT APPROVAL PROCESS

As the Seventh Circuit has recognized, federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain:

> It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement. In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources.

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 312-13 (7th Cir. 1980) (citations and quotations omitted), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873, 875 (7th Cir. 1998); *see also Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); 4 *Newberg on Class Actions* § 11.41 (4th ed. 2002) (collecting cases).

## V.     ARGUMENT

The proposed Settlement, negotiated at arm's length by competent, experienced counsel, provides Settlement Class Members substantial monetary relief in a prompt and efficient manner. The Court should (A) preliminarily approve the Settlement, (B) provisionally certify the Settlement Class, (C) appoint Plaintiff as class representative and his counsel as Class Counsel, (D) approve the proposed Settlement Class Notice Program, and (E) schedule the Fairness Hearing.

### A.     The Settlement Should Be Preliminarily Approved

Rule 23(e) provides that a court may approve a proposed class settlement "on a finding that it is fair, reasonable, and adequate." *See* Fed. R. Civ. P. 23(e)(2); *see also Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006); *Armstrong*, 616 F.2d at 314. At the preliminary approval stage, the district court need only assess whether the proposed settlement falls "within the range of possible approval," in order to "ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Id.*

While "[f]ederal courts naturally favor the settlement of class action litigation," *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 345 (N.D. Ill. 2010) (quoting *Isby*, 75

F.3d at 1196), district courts must nonetheless consider the following four factors to determine whether a proposed settlement is fair, reasonable and adequate: (1) the strength of the plaintiff's case compared to the amount of the settlement offer, (2) the length, complexity, and expense of further litigation, (3) the opinion of competent counsel, and (4) the stage of the proceedings and amount of discovery completed. *See Synfuel*, 463 F.3d at 653 (citing *Isby*, 75 F.3d at 1199). "Although this standard and the factors used to measure it are ultimately questions for the fairness hearing that comes after a court finds that a proposed settlement is within approval range, a more summary version of the same inquiry takes place at the preliminary phase," *Kessler v. Am. Resorts International's Holiday Network, Ltd.*, No. 05 C 5944, 2007 WL 4105204, at \*5 (N.D. Ill. Nov. 14, 2007) (citing *Armstrong*, 616 F.2d at 314), under which the facts are viewed "in the light most favorable to the settlement," *Isby*, 75 F.3d at 1199.

Each of these four factors weighs in favor of finding the proposed Settlement fair, reasonable and adequate, warranting its preliminary approval.

### 1. The Settlement Provides Substantial Relief to the Settlement Class, Particularly Given the Risks Posed by Continued Litigation

"The most important factor relevant to the fairness of a class action settlement is the first one listed: the strength of the plaintiff's case on the merits balanced against the amount offered in the settlement." *Synfuel*, 463 F.3d at 653 (internal quotes and citations omitted). "Because the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to the plaintiffs." *In re AT&T Mobility*, 270 F.R.D. at 347 (citations omitted).

The amount offered in the Settlement – $7 million – is substantial. Should the Settlement be approved, each Settlement Class Member who submits a Valid Claim will receive a Cash Award. And while Plaintiff continues to believe that his claims against the Oasis Entities have merit, there

10

are a number of legal uncertainties associated with continued litigation that pose substantial risk of non-recovery to the Settlement Class. *See In re Southwest Airlines Voucher Litig.*, No. 11-cv- 8176, 2013 WL 4510197, at *7 (N.D. Ill. Aug. 26, 2013) ("In considering the strength of plaintiffs' case, legal uncertainties at the time of settlement favor approval.").

First, the Parties' primary disagreement in this case concerns whether ringless voicemails are governed by the TCPA. The Oasis Entities have taken the position that they are not, *see* ECF Doc. 36 at 2 n.1 ("Should this case proceed, Oasis Energy expects to argue in the context of summary judgment that ringless voicemail falls outside the scope of the TCPA. Among other things, ringless voicemail is not a "call" subject to the statute"). Though Plaintiff disagrees with the Oasis Entities 'position and believes it is incorrect factually and legally, should this Court ultimately agree with the Oasis Entities and grant summary judgment on the issue, the Class will be left with nothing.

Second, the Parties disagree whether the Settlement Class could be certified on a contested motion for class certification filed by Plaintiff. the Oasis Entities maintain, *inter alia*, that individual issues among Settlement Class Members would predominate and preclude class certification, including issues of consent. Plaintiff disagrees but acknowledges that "[c]ourts determine whether issues of individualized consent defeat commonality and predominance in a TCPA cases on a case-by-case basis after evaluating the specific evidence available to prove consent." *Physicians Healthsource, Inc. v. A-S Medication Sols.*, LLC, 318 F.R.D. 712, 725 (N.D. Ill. 2016); *compare, e.g.*, *G.M. Sign, Inc. v. Brink's Mfg. Co.*, No. 09 C 5528, 2011 WL 248511, at *8 (N.D. Ill. Jan. 25, 2011) (denying certification where defendant offered evidence that consent could not be shown with common proof), *and Versteeg v. Bennett, Deloney & Noyes, P.C.*, 271 F.R.D. 668, 674 (D. Wyo. 2011) (declining to certify TCPA class in light of individualized inquiry "into whether each individual gave 'express consent' by providing their wireless number"), *with*

*Savanna Grp., Inc. v. Trynex, Inc*., No. 10-CV-7995, 2013 WL 66181, at *15 (N.D. Ill. Jan. 4, 2013) (granting class certification and rejecting argument that questions of consent caused individual issues to predominate because defendant had not offered evidence that any particular class member consented to the faxes at issue), *and Zyburo v. NCSPlus, Inc.*, 44 F. Supp. 3d 500, 503 (S.D.N.Y. 2014) (holding defendant failed to make a sufficient showing that individualized issues of consent would predominate where defendant failed to keep records of consent), *and Green v. Serv. Master On Location Servs. Corp.*, No. 07 C 4705, 2009 WL 1810769, at *2 (N.D. Ill. June 22, 2009) (explaining that "the question of consent may rightly be understood as a common question and the possibility that some class members may have consented is not sufficient to defeat class certification"). Thus, if the Oasis Entities were able to present evidence of "prior express written consent" for a portion of the Settlement Class, there would be a risk of the Court denying class certification and the Settlement Class recovering nothing.

The Oasis Entities have also argued that Plaintiff's individual claims fail because the technology at issue is not covered under the relevant statutes and that Plaintiff suffered no damages. Furthermore, they contest, even if Plaintiff's claims survived, he would be unable to certify a class because identification of class members is impossible, individual issues would predominate, and Plaintiff is an inadequate class representative. All of these risk factors weigh in favor of settlement.

Finally, even if Plaintiff were to win class certification, there would remain a risk of losing a jury trial. And even assuming Plaintiff prevailed at trial, any judgment could be reversed on appeal and, even if it were not, any class-wide damages award "would most surely bankrupt the prospective judgment debtor." *In re Capital One*, 80 F. Supp. 3d at 790. A pyrrhic victory for the Settlement Class at trial is in no one's interest.

The $7 million Settlement is, by any reasonable measure, an excellent result for the Settlement Class. Accordingly, the first and most important factor weighs in favor of finding the

Settlement fair, reasonable and adequate. *See Schulte v. Fifth Third Bank*, No. 09-CV-6655, 2010 WL 8816289, at *3 (N.D. Ill. Sept. 10, 2010) (where a "settlement appears relatively generous when compared to settlements in analogous circumstances[, it] is sufficient to satisfy the standard for *preliminary* approval") (emphasis in original).

## 2.  Continued Litigation Would Be Complex, Costly and Lengthy

Preliminary approval is also favored where "[s]ettlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011).

If this litigation were to continue, it would be lengthy and very expensive and involve extensive motion practice, including a motion for class certification (and possibly a motion for decertification), motions for summary judgment and various pretrial motions, as well as the retention of experts, preparation of expert reports, and expert depositions. *See Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("[C]lass action suits have a well deserved reputation as being most complex."). For example, Plaintiffs would need to hire an expert to identify members of the Settlement Class based on call records produced in this case, an expensive process (and one the Oasis Entities are likely to challenge with their own experts) that would itself take several months. The case would probably not go to trial for over a year. And even if the Settlement Class recovered a judgment at trial in excess of the $7.0 million provided by the Settlement, post-trial motions and the appellate process would deprive them of any recovery for years, and possibly forever in the event of a reversal.

Rather than embarking on years of protracted and uncertain litigation, Plaintiff and his counsel negotiated a Settlement that provides immediate, certain, and *meaningful* relief to all Settlement Class Members. *See Schulte*, 805 F. Supp. 2d at 586. Accordingly, the second factor weighs in favor of finding the Settlement fair, reasonable and adequate. *See Borcea v. Carnival*

13

*Corp.*, 238 F.R.D. 664, 674 (S.D. Fla. 2006) (noting that " [i]t has been held proper to take the bird in the hand instead of a prospective flock in the bush").

### 3. Proposed Class Counsel Is Competent, Well-Informed and Experienced, and Strongly Endorses the Settlement

The third factor examines the opinion of competent counsel as to whether a proposed settlement is fair, reasonable, and adequate. *Isby*, 75 F.3d at 1200. In assessing the qualifications of counsel under this factor, a court may rely upon affidavits submitted by class counsel as well as its own observations of class counsel during the litigation. *Id.*

Plaintiff's counsel and proposed Class Counsel, Katrina Carroll of Carlson Lynch LLP, Scott Edelsberg of Edelsberg Law PA Andrew Shamis of Shamis & Gentile PA, and Manuel S. Hiraldo of Hiraldo P.A. have significant experience in consumer privacy class action litigation and have been appointed and served as class counsel in similar TCPA cases. *See* Firm Resumes (attached hereto as **Exhibits B-E**, respectively). Class Counsel strongly endorse this Settlement, which they negotiated at arm's length before an experienced mediator.

Accordingly, the third factor weighs in favor of finding the Settlement fair, reasonable and adequate. *See, e.g., McKinnie v. JP Morgan Chase Bank, N.A.,* 678 F. Supp. 2d 806, 812 (E.D. Wis. 2009) (that "counsel endorses the settlement and it was achieved after arms-length negotiations facilitated by a mediator . . . suggest that the settlement is fair and merits final approval."); *see also In re Mexico Money Transfer Litig.,* 164 F. Supp. 2d 1002, 1020 (N.D. Ill. 2000) (placing "significant weight on the unanimously strong endorsement of these settlements" by "well-respected attorneys").

### 4. The Settlement Was Reached After Significant Litigation, Wide-Ranging Discovery and Arm's Length Negotiations

The last factor concerns the stage of the proceedings and amount of discovery completed at the time the settlement is reached. *Synfuel*, 463 F.3d at 653. This factor is significant because

14

"it indicates how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 C 2898, 2011 WL 3290302 (N.D. Ill. July 26, 2011) (quoting *Armstrong,* 616 F.2d at 325) (internal quotations omitted).

The proposed Settlement was reached after nearly a year of hard-fought litigation and was informed by counsel's thorough review and analysis of significant amounts of documents and ESI produced by the Oasis Entities and several third parties, concerning every aspect of this case. Armed with this information, Plaintiff and his counsel had "a clear view of the strengths and weaknesses" of the case and were in a strong position to negotiate a fair, reasonable, and adequate settlement on behalf of the Settlement Class at mediation. *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985), *aff'd* 798 F.2d 35 (2d Cir. 1986).

Mediation was also hard-fought. While the Parties were able to reach an agreement in principle after nearly twelve hours of extensive negotiations with the assistance of Judge Mason, the Settlement Agreement was only executed after Class Counsel confirmed the size of the Settlement Class and engaged in other necessary confirmatory discovery. Because the Settlement is the product of "arm's length negotiations between experienced counsel after significant discovery ha[s] occurred, the Court may presume the settlement to be fair, adequate, and reasonable." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006) (citations omitted); H. Newberg, A. Conte, Newberg on Class Actions § 11.41 (4th ed. 2002) (presumption of fairness exists where a proposed class settlement "is the product of arm's length negotiations, sufficient discovery has been taken to allow the parties and the court to act intelligently, and counsel involved are competent and experienced.").

Accordingly, the final factor weighs in favor of finding the Settlement fair, reasonable and adequate.

**B.      The Settlement Class Should Be Provisionally Certified for Settlement**

15

**Purposes**

The Court should next find that the proposed Settlement Class is appropriate for provisional certification pursuant to Rule 23(a) and that it fits into one of the three subsections of Rule 23(b). *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 621 (1997); *In re AT&T Mobility*, 270 F.R.D. at 340-345 (citations omitted); *see also* Manual for Complex Litigation § 21.632 (4th ed. 2004). Provisional certification will allow the Settlement Class to receive notice of the Settlement and its terms, including the rights of Settlement Class Members to submit a Claim Form and recover a Cash Award if the Settlement is finally approved, to be heard on the Settlement's fairness at the Fairness Hearing, and to opt out of the Settlement.

For the reasons below, the Court should provisionally certify the Settlement Class – defined as all individuals within the United States (i) who were sent a prerecorded message, also referred to a ringless voicemail (ii) on his or her telephone (iii) by or on behalf of the Oasis Entities advertising the Oasis Entities ' goods and services during the Class Period – under Rule 23(a) and Rule 23(b)(3).

## 1. The Requirements Of Rule 23(a) Are Satisfied

Rule 23(a) requires that (a) the proposed settlement is so numerous that joinder of all individual class members is impracticable (numerosity); (b) there are questions of law or fact common to the proposed settlement class (commonality); (c) plaintiff's claims are typical of those of the class (typicality), and (d) the plaintiff and class counsel will adequately protect the interests of the class (adequacy). Fed. R. Civ. P. 23(a)(1)–(4); *In re AT & T*, 270 F.R.D. at 340-44. The Settlement Class satisfies each of these requirements.

### a. Numerosity

The first requirement of Rule 23(a) is that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Settlement Class consists of millions of

16

individuals dispersed throughout the United States. Joinder of all Settlement Class Members is obviously impractical. *See McCabe v. Crawford & Co.,* 210 F.R.D. 631, 643 (N.D. Ill. 2002) (forty or more class members is generally sufficient to establish numerosity). Accordingly, the numerosity requirement of Rule 23(a) is satisfied.

> ### b.  Commonality

The second requirement is that "there are questions of law or fact common to the class." Rule 23(a)(2). The commonality requirement is satisfied where a plaintiff asserts claims that "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011).

Many questions of law and fact are common to the Settlement Class in this case, including whether Defendant's ringless voicemails violate the TCPA, whether the Oasis Entities ' messages are "advertisements" under the TCPA, whether the Oasis Entities  obtained express written consent, and whether the Oasis Entities ' violations were willful or knowing. *See Parker v. Risk Mgmt. Alternatives, Inc*., 206 F.R.D. 211, 213 (N.D. Ill. 2002) ("[A] common nucleus of operative fact is usually enough to satisfy the [commonality] requirement."); *see also, e.g., G.M. Sign, Inc. v. Finish Thompson, Inc*., No. 07 C 5953, 2009 U.S. Dist. LEXIS 73869, *12 (N.D. Ill. Aug. 20, 2009) (finding the following common questions: "1) whether Defendant violated the TCPA by faxing advertisements without first obtaining express invitation or permission to do so; 2) whether Plaintiff and other class members are entitled to statutory damages; and 3) whether the Oasis Entities  acts were 'willful' or 'knowing' under the TCPA and, if so, whether Plaintiff and other class members are entitled to trebled damages."). Accordingly, the commonality requirement of Rule 23(a) is satisfied.

### c.     Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The typicality requirement is not demanding." *Fogarazzao v. Lehman Bros., Inc.*, 232 F.R.D. 176, 180 (S.D.N.Y. 2005).

Plaintiff's claims are typical of the claims of Settlement Class Members because Plaintiff's claims arise out of the same "event, practice or course of conduct that gives rise to the claim[s] of the other class members" and "are based on the same legal theory." *Parker*, 206 F.R.D. at 213. Plaintiff and each Settlement Class Member received one or more ringless voicemail messages from the Oasis Entities sent as part of the same marketing campaign. Moreover, Plaintiff and the putative Settlement Class members all seek statutory damages. Accordingly, the typicality requirement of Rule 23(a) is satisfied.

### d.     Adequacy of Representation

The fourth and final Rule 23(a) requirement is "adequacy of representation," Fed. R. Civ. P. 23(a)(4), which has two components: (1) "the representatives must not possess interests which are antagonistic to the interests of the class;" and (2) "the representatives' counsel must be qualified, experienced and generally able to conduct the proposed litigation." *CV Reit, Inc. v. Levy*, 144 F.R.D. 690, 698 (S.D. Fla. 1992) (citation omitted).

The first component is satisfied because Plaintiff's interests in this litigation are aligned with, and not antagonistic to, those of the Settlement Class. *See G.M. Sign,* 2009 U.S. Dist. LEXIS 73869, at *15-16; *Zyburo*, 44 F. Supp. 3d at 503 (holding that "the adequacy requirement is satisfied with respect to the lead plaintiff in this kind of consumer case unless plaintiff's interests are antagonistic to the interest of other members of the class") (quotation omitted). Plaintiff challenges the same alleged unlawful conduct and seeks the same monetary relief for himself and all Settlement Class Members. Plaintiff retained counsel, assisted with the litigation, and vigorously prosecuted the case

18

on behalf of the Settlement Class.

The second component of Rule 23(a)(4) is satisfied because Plaintiff hired qualified and competent counsel who are experienced in class actions generally and TCPA litigation in particular. *See* Exhibit B. Plaintiff's counsel have successfully investigated, commenced, and prosecuted many complex cases and class actions, including the instant action. *Id.* Accordingly, the adequacy of representation requirement of Rule 23(a) is satisfied.

## 2.   The Requirements Of Rule 23(b)(3) Are Satisfied

Finally, because Plaintiff seeks provisional certification under Rule 23(b)(3), Plaintiff must additionally show (a) that common questions of law or fact predominate over questions affecting only individual class members (predominance); and (b) that a class action is superior to other available methods of resolving the controversy (superiority). Fed. R. Civ. P. 23(b)(3); *In re AT&T Mobility*, 270 F.R.D. at 344-45. Both requirements are easily satisfied by the proposed Settlement Class.

### a.        Common Questions Predominate

The predominance requirement of Rule 23(b)(3) is satisfied because common questions comprise a substantial aspect of the case and can be resolved for all Settlement Class members in a single adjudication. *See Roach v. T.L Cannon Corp.*, 773 F.3d 401, 405 (2d Cir. 2015) (predominance is satisfied "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof").

This entire case is focused on the Oasis Entities ' alleged common practice of using Silverman's technology to transmit the same advertising messages to cellular telephone numbers provided by TMC. *See, e.g., Sadowski v. Med1 Online, LLC*, No. 07 C 2973, 2008 U.S. Dist. LEXIS 41766, *13 (N.D. Ill. May 27, 2008) (finding common issues such as "how numbers were

generated from Defendant's database and whether Defendant's actions . . . violated the TCPA" to predominate, and that the issue of consent might be resolved through common proof such as "the source of the numbers" and "how Defendant selected who was to receive the [ ] faxes").

Thus, the central questions in this case – whether the Oasis Entities sent advertising messages to cellular phones without "express written consent" – are capable of resolution on a class-wide basis by looking to the Oasis Entities ' and TMC's records and Silverman's technology. Because the Oasis Entities used the same technology to transmit all of the ringless voicemail messages, whether that technology violates the TCPA is a question capable of resolution on a class-wide basis with common proof. Moreover, unlike many TCPA actions, individualized issues of consent do not predominate. Whether the messages sent by the Oasis Entities are "advertisements" within the meaning of the TCPA (they clearly are) is a question of law that can be resolved in one stroke for the entire Settlement Class – and, if answered in the affirmative, would subject the Oasis Entities to the heightened requirement of "prior express <u>written</u> consent" for the entire Settlement Class. In any event, the Oasis Entities have the burden to plead and produce evidence of consent for entire Settlement Class, *see Johansen v. GVN Michigan, Inc.*, No. 1:15-cv-00912, 2015 WL 3823036, at *1 (June 18, 2015) (noting burden is on the defendant to plead consent affirmative defense), and thus far the Oasis Entities has produced no evidence of such consent for any Settlement Class Member.

Because there are no apparent issues requiring individualized proof, the predominance requirement is satisfied for purposes of preliminary approval.

### b.    Class Treatment of Plaintiff's Claims is Superior

Rule 23(b)(3) also requires that a class action be superior to other available methods for adjudicating the controversy. "The superiority requirement is often met where class members' claims would be too small to justify individual suits, and a class action would save litigation costs

by permitting the parties to assert their claims and defenses in a single proceeding." *Kaye v. Amicus Mediation & Arbitration Group, Inc*., 300 F.R.D. 67, 81 (D. Conn. 2014); *see also Amchem,* 521 U.S. at 617 (noting that "the Advisory Committee had dominantly in mind vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all").

A class action is the superior method for the fair and efficient adjudication of these claims. Plaintiff's claims are shared by millions of other consumers, each of whom received at least one ringless voicemail from the Oasis Entities via the same dialing technology. The resolution of all claims of all Settlement Class Members in a single proceeding promotes judicial efficiency and avoids inconsistent decisions. *See Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 155 (1982) (noting "the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical fashion under Rule 23"). Further, the statutory damages available under the TCPA ($500.00 per violation, or $1,500.00 if the violation is willful) are small in comparison to the costs of litigation. As a result, it is unlikely any Settlement Class Member would be willing or able to pursue relief on an individual basis.

Accordingly, the superiority requirement is satisfied for purposes of preliminary approval. The Court should provisionally certify the Settlement Class.

### C.    Plaintiff's Counsel Should Be Appointed Class Counsel

Upon certifying a class, Rule 23 requires that a court appoint class counsel who will "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B), (2), (4); *Harris v. Circuit City Stores, Inc.*, No. 07-cv-2512, 2008 WL 400862, at *11 (N.D. Ill. Feb. 7, 2008) (citation omitted). In appointing class counsel, the court must consider (1) the work counsel has done in identifying or investigating potential claims; (2) counsel's experience in handling class actions,

other complex litigation, and the types of claims asserted in the case; (3) counsel's knowledge of the applicable law, and (4) the resources class counsel has committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv); *Reliable Money Order, Inc. v. McKnight Sales Co.*, 704 F.3d 489, 498 n.7 (7th Cir. 2013).

In this case, proposed Class Counsel readily satisfy the criteria of Rule 23(g). First, Plaintiff's counsel have devoted substantial time, effort and resources to this litigation, beginning with their initial investigation of Plaintiff's allegations, continuing through a year of vigorous litigation, formal discovery and expert consultation, and ending with hard-fought settlement negotiations, a lengthy mediation and confirmatory discovery. Second, as discussed above, Plaintiff's counsel have extensive experience in complex class action litigation, in district courts of the Seventh Circuit and elsewhere and have served as class counsel in other cases involving the alleged transmission of unsolicited messages in violation of the TCPA.

Accordingly, the Court should appoint Katrina Carroll of Carlson Lynch LLP, Scott Edelsberg of Edelsberg Law PA Andrew Shamis of Shamis & Gentile PA, and Manuel S. Hiraldo of Hiraldo P.A. as Class Counsel.

## D.    The Court Should Approve the Proposed Notice, and Direct the Settlement Administrator to Provide Notice to the Settlement Class

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Compl. Lit., supra*, at § 21.312. The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). The notice must contain specific information in plain, easily understood

language, including the nature of the action and the rights of class members. Fed. R. Civ. P. 23(c)(2)(B)(i)–(vii); *see also In re AT&T Mobility*, 270 F.R.D. at 352.

Pursuant to the Settlement Agreement, the Class Notice will provide information to Settlement Class Members regarding the filing of Claim Forms, SA § 8, and additionally will: (i) describe the essential terms of the Settlement; (ii) disclose Class Counsel's intention to file an application with the Court for a Service Award to the Class Representative; (iii) provide information regarding the application for an Attorneys' Fee Award that Class Counsel intend to file with the Court; (iv) indicate the time and place of the hearing to consider final approval of the Settlement, and the method for objection to and/or opting out of the Settlement; (v) explain the procedures for allocating and distributing the Settlement Fund; and (vi) prominently display the address of Class Counsel and the procedure for making inquiries, *id.*; *see also In re AT&T Mobility*, 270 F.R.D. at 352 (the notice should contain specific information, in plain, easily understood language, concerning the nature of the action and the rights of class members).

Claim Forms will be available from the Settlement Administrator, upon request, and on the Settlement Website. A sample claim form is attached to Exhibit A as internal Exhibit 1. Settlement Class Members will be able to submit their respective Claim Forms through the Settlement Website, by e-mail, or by U.S. postal mail. *Id.* § 9. In order to file a Valid Claim, as necessary to receive a Cash Award, Settlement Class Members must sign and return by the Claim Deadline a fully completed Claim Form. *Id.*

The Settlement Agreement requires the Settlement Administrator to implement a comprehensive Settlement Class Notice Program for providing the Class Notice to Settlement Class Members and otherwise notifying the Settlement Class of the Settlement and the Settlement Agreement. *Id.* § 8. Immediately after the Court enters the Preliminary Approval Order directing commencement of the Settlement Class Notice Program, the Settlement Class will also be notified

with electronic advertisements published by the Settlement Administrator on widely utilized Internet search engines, in online databases, and through online banner advertisements. *Id.* § 8.01; *see* Fed. R. Civ. P. 23(e)(1) (calling for notice to be provided in a "reasonable manner to all class members who would be bound by the proposal"); *In re Northfield*, 2012 WL 366852, at *7. This electronic publication campaign will be targeted both on a regional basis (in markets where the Oasis Entities directed the vast majority of their messages and where most Settlement Class Members reside), as well as nationally for maximum reach.

The notice will direct Settlement Class Members to the Settlement Website, which will contain the Class Notice and an electronic version of the Claim Form that can be submitted online, as well as answers to frequently asked questions, the toll-free Settlement telephone number, and copies of the full Settlement Agreement and other important documents (including the Complaint, this Motion, all Orders of this Court concerning the Settlement, and Plaintiff's forthcoming motions for attorneys' fees and service award and final approval of the Settlement). *Id.* § 8.02.

The proposed Settlement Class Notice Program is robust, comprehensive and informative, effectuating the Class Notice through regional and national publication, the Settlement Website and the toll-free Settlement number and providing for the filing of Claim Forms by postal mail and e-mail and on the Settlement Website. Accordingly, Plaintiff respectfully requests that the Court, as set forth in the proposed order accompanying this Motion, find that the notice provided by the Settlement Class Notice Program: (i) is the best practicable notice; (ii) is reasonably calculated, under the circumstances, to apprise the Settlement Class of the pendency of the Litigation and of their right to object to or to exclude themselves from the proposed settlement; (iii) is reasonable and constitutes due, adequate and sufficient notice to all Persons entitled to receive notice; and (iv) meets all requirements of applicable law.

Further, Plaintiff respectfully requests that the Court, as set forth in the proposed order

accompanying this Motion, approve the Class Notice and Claim Form, appoint Epiq as the Settlement Administrator, direct the Settlement Administrator to disseminate the Class Notice in accordance with the Settlement Class Notice Program by the Notice Date (i.e., within twenty-one (21) days after the Preliminary Approval Date), require the Settlement Administrator to file proof of compliance with the Settlement Class Notice Program no later than seven (7) days before the Fairness Hearing, and set a Claim Deadline ninety-days (90) after the Notice Date.[2]

### E. The Court Should Schedule The Fairness Hearing

The last step in the settlement approval process, after completion of the Settlement Class Notice Program, will be a Fairness Hearing on final approval of the Settlement and Settlement Agreement to consider the fairness, reasonableness and adequacy of the proposed Settlement and whether it should be finally approved by the Court, and to determine the reasonableness of the requested Attorneys' Fee Award and Service Award. SA § 11.02. Plaintiff respectfully requests that the Court schedule the Fairness Hearing to be held fourteen (14) days after the Claims Deadline or another date thereafter as convenient for the Court, as set forth in the proposed order accompanying this Motion.

Finally, the Court should order all documents in support of final approval of the Settlement Agreement, and in response to any objections filed by Settlement Class Members, to be filed with the Court on or before seven (7) days prior to the Fairness Hearing, as set forth in the proposed order accompanying this Motion.

### VI. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant this Motion and, consistent with the proposed order attached hereto, enter an order:

---

[2] Within ten (10) days of the filing of this Motion and the attached Settlement Agreement, Defendants will serve or cause the Class Administrator to serve CAFA Notice in full compliance with 28 U.S.C. § 1715. SA § 8.04.

(A) preliminarily approving the Settlement;

(B)  provisionally certifying the Settlement Class and appointing Plaintiff as class representative and Plaintiff's counsel as Class Counsel;

(C) approving the Class Notice and Settlement Class Notice Program, appointing Epiq as Settlement Administrator, ordering that the Settlement Class Notice Program be effectuated, and ordering that proof of compliance with the Settlement Class Notice Program be filed by the Settlement Administrator no later than seven (7) days before the Fairness Hearing;

(D) setting a Notice Date of twenty-one (21) days after the Preliminary Approval Date;

(E) setting a Claims Deadline of ninety (90) days after the Notice Date;

(F) establishing the procedure for Settlement Class Members to object to the Settlement or exclude themselves from the Settlement Class, and setting an Opt-Out and Objection Date of sixty (60) days after the Notice Date;

(G)  ordering the motion for final approval and any response to any objection to be filed with the Court no later than seven (7) days prior to the Fairness Hearing;

(H)  directing Class Counsel to file any application for an Attorneys' Fee Award and Service Award at least fourteen (14) days prior to the Opt-Out and Objection Date;

(I) ordering the Settlement Administrator to provide the Opt-Out List to Class Counsel and Defense Counsel no later than seven (7) days after the Opt-Out and Objection Date and to then file with the Court the Opt-Out List with an affidavit attesting to the completeness and accuracy thereof no later than seven (7) days before the Fairness Hearing;

(J) preliminarily enjoining Settlement Class Members who have not excluded themselves from initiating or participating in litigation related to the underling facts of this case, consistent with the language in the proposed order attached to this Motion;

(K) staying all proceedings, except those related to effectuating the Settlement, pending

26

final determination of whether the Settlement should be approved; and

      (L) scheduling a Fairness Hearing for a date fourteen (14) days after the Claims Deadline or another date thereafter as convenient for the Court, as set forth in the proposed order accompanying this Motion.

Dated: September 18, 2019                  Respectfully submitted,

                                        *By: /s/ Katrina Carroll*

                                        Katrina Carroll, Esq.
                                        kcarroll@carlsonlynch.com
                                        Kyle A. Shamberg, Esq.
                                        kshamberg@carlsonlynch.com
                                        **CARLSON LYNCH, LLP**
                                        111 W. Washington Street, Suite 1240
                                        Chicago, Illinois
                                        60602
                                        Phone No. (312) 750-1265
                                        Fax No. (312) 212-5919

                                        **SHAMIS & GENTILE, P.A.**
                                        Andrew J. Shamis
                                        ashamis@shamisgentile.com
                                        14 NE 1st Avenue, Suite 400
                                        Miami, FL 33132
                                        Telephone: 305-479-2299
                                        Fax: 786-623-0915

                                        **EDELSBERG LAW**
                                        20900 NE 30th Ave #417
                                        Aventura, FL 33180
                                        scott@edelsberglaw.com
                                        305-975-3320

                                        **HIRALDO P.A.**
                                        Manuel S. Hiraldo
                                        Pro Hac Vice
                                        401 E. Las Olas Boulevard Suite 1400
                                        Ft. Lauderdale, FL 33301
                                        mhiraldo@hiraldolaw.com
                                        Telephone: 954-400-4713

                                        ***Counsel for Plaintiff and the Putative Class***