**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KENNETH ALBRECHT, on behalf of himself and all others similarly situated, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 1:18-cv-1061<br>)<br>) Hon. Harry D. Leinenweber |
| OASIS POWER, LLC doing business as OASIS ENERGY, | )<br>)<br>) |
| Defendant. | ) |

**PLAINTIFF'S UNOPPOSED MOTION FOR ATTORNEYS'
FEES AND EXPENSES AND CLASS REPRESENTATIVE SERVICE AWARD**

I. **INTRODUCTION**

On September 24, 2019, this Court preliminarily approved a proposed class action settlement between Plaintiff Kenneth Albrecht and Defendant Oasis Power, LLC, and its related entities. This Settlement creates a $7,000,000 non-reversionary common fund for the benefit of hundreds of thousands of consumers to whom Defendant transmitted prerecorded advertising messages in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Class Counsel zealously prosecuted Plaintiff's and the class members' claims for nearly two years, achieving the settlement only after extensive first and third-party discovery; contested motion practice, and months of negotiations, including mediation before the Hon. Michael Mason at JAMS.

As compensation for the substantial benefit conferred upon the Settlement Class, Class Counsel respectfully move the Court for an award of attorneys' fees and costs totaling $2,333,310, which represents one-third of the total settlement fund. This unopposed request should be approved because: (1) it represents the market rate for this type of settlement and is in line with the Seventh Circuit's guidance on attorneys' fees, and (2) represents a reasonable and appropriate amount in light of the substantial risks presented in prosecuting this action, the quality and extent of work conducted, and the stakes of the case. Class Counsel also respectfully move the Court for a service award of $7,500 to Plaintiff Albrecht for his work on behalf of the Class, which includes his deposition, responding to written discovery, and settlement efforts. Class Counsel respectfully submit that such an award is routine and proper.

II. **BACKGROUND**

A. **History of the Litigation and Discovery**

Plaintiff filed his class action complaint in February 2018. ECF Doc. 1. After he amended once as a matter of right, Defendant moved to dismiss the First Amended Complaint, arguing that Plaintiff lacked standing under Fed. R. Civ. P. 12(b)(1) because he had not suffered any cognizable

1

injury in fact from his receipt of ringless voicemails, and to stay discovery during that motion's pendency. ECF Docs. 31, 36. The Court soon thereafter denied the motion to stay, permitting discovery to proceed in the usual course. ECF Doc. 38.

The Court then denied the Motion to Dismiss in October 2018, ECF Doc. 48, finding that the TCPA "establishes substantive, not procedural, rights to be free from telemarketing calls consumers have not consented to receive," and both the "history and the judgment of Congress suggest that violation of this substantive right is sufficient to constitute a concrete, de facto injury." *Id.* The Court therefore concluded that Plaintiff's allegations of invasion of privacy, annoyance, and harassment were sufficient to establish standing under the TCPA. *Id.*

From May 2018 until June 2019, the Parties engaged in voluminous and wide-ranging discovery, serving and responding to written discovery, meeting and conferring regarding same, deposing Defendant's 30(b)(6) representative and Plaintiff in his capacity as class representative, and serving multiple subpoenas on the third party entities that Defendant hired to conduct the marketing campaigns, as well as pursuing motions to compel those entities' noncompliance therewith. This discovery revealed that the allegations asserted against Oasis applied to and were not distinguishable from various related entities, together referred to as the Oasis Entities, who together retained the same vendors to send the alleged ringless voicemails at issue.

### B. Settlement Discussions, Mediation and Confirmatory Discovery

The Parties agreed to attend private mediation on June 25, 2019 in Chicago, Illinois before the Hon. Michael Mason, a well-respected and experienced JAMS mediator and former U.S. Magistrate Judge for the Northern District of Illinois. The Parties exchanged confidential mediation statements articulating their respective positions on each of the key legal issues relating to liability, class certification and damages exposure, and Plaintiff provided a proposed settlement term sheet ahead of mediation.

At mediation, the Parties discussed their competing views on various issues, including the relief to which the Settlement Class is potentially entitled and the prospects of class certification, and eventually began exchanging counterproposals on key aspects of the Settlement. The Parties' negotiations were highly adversarial and at arm's length. After almost twelve hours of mediation, the Parties reached an agreement on the principal terms of the Settlement and signed a binding term sheet, which the Parties agreed would be used to memorialize the Settlement Agreement and select a Settlement Administrator.

### C. Settlement Agreement and Preliminary Approval

The Parties thereafter finalized their understanding by executing a Settlement Agreement, which the Court preliminary approved in September 2019. *See* ECF Doc. 62-1 (Settlement Agreement) ("SA"), ECF Doc. 69 (Preliminary Approval Order).

Pursuant to the Settlement Agreement, the Oasis Entities have agreed to pay, on a non-reversionary basis, cash in the amount of $7,000,000.00 to create the Settlement Fund, for the benefit of Settlement Class Members, and which will be used to pay all Settlement costs, including without limitation the Cash Awards, Notice and Administrative Costs, any Attorneys' Fee Award and Service Award awarded by the Court, and will be in full satisfaction of all of the Oasis Entities' monetary obligations under the Settlement and Settlement Agreement. SA § 4.01.

After Notice and Administration Costs and any Attorneys' Fee Award and Service Award have been paid from the Settlement Fund, each Settlement Class Member who submits a Valid Claim will receive a pro rata share of the remainder of the Available Cash Award Total. *Id.* § 4.02; *see also id.* §§ 4.03-4.06 (timing of and process for payment distribution). Regardless of the number of Valid Claims submitted, no portion of the Settlement Fund shall be returned or refunded to the Oasis Entities. *Id.* § 4.05

The Settlement Administrator estimates that the costs for both notice to the Settlement

3

Class and claims administration will total approximately $934,000. *See* ECF Doc. 66, Azari Decl. ¶ 24. The Oasis Entities further agreed to pay from the Settlement Fund, subject to Court approval, a reasonable Service Award to Plaintiff in recognition of the time and effort he expended in pursuing this action and in fulfilling his obligations and responsibilities as class representative, SA § 5.01, as well as a reasonable Attorneys' Fee Award to proposed Class Counsel, as may be awarded by the Court, *id.* § 5.02

### III. LEGAL STANDARD FOR ATTORNEYS FEES

The Seventh Circuit and other federal courts have long recognized that when counsel's efforts result in the creation of a common fund that benefits plaintiffs and unnamed class members, counsel have a right to be compensated from that fund for their successful efforts in creating it. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("lawyer who recovers a common fund … is entitled to a reasonable attorneys' fee from the fund as a whole"); *Sutton v. Bernard*, 504 F.3d 688, 691 (7th Cir. 2007) ("the attorneys for the class petition the court for compensation from the settlement or common fund created for the class's benefit").

In common fund cases, courts have discretion to use one of two methods to determine whether the request is reasonable: (1) percentage of the fund; or (2) lodestar. *Americana Art China, Co. v. Foxfire Printing & Packaging, Inc.*, 743 F.3d 243, 247 (7th Cir. 2014). However, "the approach favored in the Seventh Circuit is to compute attorney's fees as a percentage of the benefit conferred upon the class." *In re Ky. Grilled Chicken Coupon Mktg. & Sales Practices Litig.*, 280 F.R.D. 364, 379 (N.D. Ill. 2011).

### IV. ARGUMENT

#### A. The Court Should Calculate Fees as a Percentage of the Fund

Courts in this District often look to *In re Synthroid Marketing Litig.* ("*Synthroid II*"), 325 F.3d 974, 980 (7th Cir. 2003), to assist in determining fees, and have nearly uniformly held that the

4

percentage of the fund reflects the "market rate" for consumer class actions because "given the opportunity … class members and Plaintiff's counsel would have bargained for" such. *Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11-4462, 2015 WL 1399367, at *5 (N.D. Ill. Mar. 23, 2015); *In re Capital One Tel. Consumer Prot. Act Litig.* ("*In re Capital One*"), 80 F. Supp. 3d 781, 795 (N.D. Ill. 2015) (percentage of the fund method is "more likely to yield an accurate approximation of the market rate" in TCPA case, and that, "had an arm's length negotiation been feasible, the court believes that the class would have negotiated a fee arrangement based on a percentage of the recovery, consistent with the normal practice in consumer class actions").

One of the advantages that the percentage of the fund has over lodestar, and a substantial reason why percentage of the fund more accurately represents the "market rate," is that "the lodestar method [would] require plaintiffs to monitor counsel and ensure that counsel are working efficiently on an hourly basis, something a class of nine million lightly-injured plaintiffs likely would not be interested in doing." *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 501 (N.D. Ill. 2015) (Discussing fee award in TCPA class action). Indeed, "there are advantages to utilizing the percentage method in common fund cases because of its relative simplicity of administration." *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 566 (7th Cir. 1994). As one seminal case found:

> The percentage method is bereft of largely judgmental and time-wasting computations of lodestars and multipliers. These latter computations, no matter how conscientious, often seem to take on the character of so much Mumbo Jumbo. They do not guarantee a more fair result or a more expeditious disposition of litigation.

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 170 (S.D.N.Y. 1989); *see also Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 573 (7th Cir. 1992) (noting it is easier to establish market based contingency fee percentages than to "hassle over every item or category of hours and expense and what multiple to fix and so forth"); *Gaskill v. Gordon*, 942 F. Supp. 382, 386

(N.D. Ill. 1996) (percentage of fund method "provides a more effective way of determining whether the hours expended were reasonable."), *aff'd*, 160 F.3d 361 (7th Cir. 1998).

### B. Counsel's Request Falls Within the Market Rate

The Court is also tasked with determining what percentage of the settlement fund is appropriately allocated as attorney's fees. The Seventh Circuit has held that "attorneys' fees in class actions should approximate the market rate that prevails between willing buyers and willing sellers of legal services." *Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956, 957 (7th Cir. 2013). Further, the court held that there should be a "presumption" that fees in any given settlement should not "exceed a third or at most a *half* of the total amount of money going to class members and their counsel." *Pearson v. NBTY, Inc.*, 772 F.3d 778, 782 (7th Cir. 2014) (emphasis added). Although *Pearson* establishes that courts must also consider the value of the settlement exclusive of administrative costs, it does not purport to alter the "market rate" analysis or lower the market rate for attorneys' fees in consumer class actions.

Here, Plaintiff's request falls squarely within the *Pearson* presumption. Plaintiff respectfully requests that the Court approve $2,333,310 in attorney's fees. This request amounts to 33.3% of the entire $7,000,000 Settlement Fund recovered by Class Counsel. The Seventh Circuit has elucidated 'benchmarks' that can assist courts in estimating the market rate, including "the fee contract between the plaintiff and counsel, data from similar cases, and information from class-counsel auctions," *Kolinek*, 311 F.R.D. at 501 (citing *In re Synthroid Mkt. Litig.* ("*Synthroid I*"), 264 F.3d 712, 719 (7th Cir. 2001)). Other factors are relevant, as well, including the risk counsel undertook in accepting the case, the quality of performance and the stakes of the case. *Synthroid I*, 264 F.3d at 721. As explained below, each of these factors supports the requested fee.

### 1. The Requested Fee Comports with the Contract Between Plaintiff and Counsel

The requested fee award is not only supported by the fee awards deemed reasonable in similar class cases; it is in line with representation agreements commonly entered into in this District, including between Plaintiff and his counsel. In addition to analyzing the market price for legal services from analogous cases, courts also may examine "actual fee contracts that were negotiated for private litigation." *Taubenfeld v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005); *see also Stumpf v. PYOD*, 12-4688, 2013 WL 6123156, at *2 (N.D. Ill. Nov. 20, 2013) ("The named plaintiff's agreement to a floor of 33.33% of any net recovery supports the claim that 30% of the net recovery is tied to the market."); *Mangone v. First USA Bank*, 206 F.R.D. 222, 226 (S.D. Ill. 2001) (requiring weight be given to the judgment of the parties and their counsel where, as here, the fees were agreed to through arm's length negotiations after the parties agreed on the other key deal terms).

The customary contingency agreement in this Circuit is 33% to 40% of the total recovery. *Gaskill v. Gordon*, 160 F.3d 361, 362–63 (7th Cir. 1998) (noting that typical contingency fees are between 33% and 40% and affirming award of 38%); *Kirchoff v. Flynn*, 786 F.2d 320, 323 (7th Cir. 1986) (observing that "40% is the customary fee in tort litigation" and noting, with approval, contract providing for one-third contingent fee if litigation settled prior to trial); *Retsky Family Ltd. P'ship v. Price Waterhouse, LLP*, Case No. 97-7694, 2001 WL 1568856, at *4 (N.D. Ill. Dec. 10, 2001) (recognizing that a customary contingent fee is "between 33 1/3% and 40%" and awarding counsel one-third of the common fund).

Here, Plaintiff entered into a retainer agreement with Class Counsel that reflects this fee range, as is normal in consumer TCPA cases in this District. Such evidence supports a finding that the requested fee reflects the amount Class Counsel would have received had they negotiated their fee *ex ante*.

**2. The Requested Fee Reflects the Fees Awarded in Other Settlements**

Awards of one-third of the entire settlement fund were commonplace before *Pearson*. *See Martin v. Dun & Bradstreet, Inc.*, 12-215 (N.D. Ill. Jan. 16, 2014) (Dkt. No. 63) (one-third of total payout); *Hanley v. Fifth Third Bank*, No. 12-1612 (N.D. Ill.) (Dkt. No. 87) (awarding attorneys' fees of one-third of total settlement fund); *Cummings v. Sallie Mae*, 12-9984 (N.D. Ill. May 30, 2014) (Dkt. No. 91) (one-third of common fund); *Desai v. ADT Sec. Servs., Inc.*, No. 11-1925 (N.D. Ill. June 21, 2013) (Dkt. No. 243) (one-third of the settlement fund); *Paldo Sign & Display Co. v. Topsail Sportswear, Inc.*, No. 08-5959 (N.D. Ill. Dec. 21, 2011) (Dkt. No. 116) (fees equal to one-third of the settlement fund plus expenses); *CE Design Ltd. v. CV's Crab House North, Inc.*, No. 07-5456 (N.D. Ill. Oct. 27, 2011) (Dkt. No. 424) (fees equal to one-third of settlement plus expenses); *Saf-T-Gard Int'l, Inc. v. Seiko Corp. of Am.*, No. 09-776 (N.D. Ill. Jan. 14, 2011) (Dkt. No. 100) (fees and expenses equal to 33% of the settlement fund); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07-5953 (N.D. Ill. Nov. 1, 2010) (Dkt. No. 146) (fees of one-third of settlement plus expenses); *Hinman v. M&M Rentals, Inc.*, No. 06-1156 (N.D. Ill. Oct. 6, 2009) (Dkt. No. 225) (fees and expenses equal to 33% of the fund); *Holtzman v. CCH*, No. 07-7033 (N.D. Ill. Sept. 30, 2009) (Dkt. No. 33) (same); *CE Design, Ltd. v. Exterior Sys., Inc.*, No. 07-66 (N.D. Ill. Dec. 6, 2007) (Dkt. No. 39) (same).

Class Counsel's request for 33.3% of the Settlement Fund is thus reflective of the typical fees awarded in similar cases and represents the post-*Pearson* market price. This is reflected in the following fees approved by judges in this District in TCPA cases since *Pearson*:

- 36% of total fund: *In re Capital One*, 80 F. Supp. 3d 781 (N.D. Ill. 2015) (36% of the first $10 million of the settlement) (Holderman, J.)

- 38% of total fund: *Martin v. JTH Tax, Inc.*, No. 13-6923 (N.D. Ill. Sept. 16, 2015), transcript of proceedings, Exhibit 2 (Shah, J.)

- 36% of the fund minus notice/admin costs: *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 501 (N.D. Ill. 2015) (Kennelly, J.)

8

- 33% of fund minus notice/admin costs: *Allen v. JPMorgan Chase Bank, NA*, No. 13-8285 (N.D. Ill. Oct. 21, 2015) (Dkt. No. 93 at 6) (Pallmeyer, J.)

- 33% of total fund or 35.4% of the fund after notice costs. *Ossola v American Express*, 13-cv-04836 (N.D. Il. December 2, 2016) (Dkt. 379 at 5) (Lee, J.)

Class Counsel's requested fee also reflects post-*Pearson* fees approved by other courts in non-TCPA cases in this Circuit. *E.g. Spano v. The Boeing Co.*, No. 06-743, 2016 WL 3791123 (S.D. Ill. March 31, 2016) (awarding 33 1/3% of the monetary settlement); *McCue v. MB Fin., Inc.*, No. 15-988, 2015 WL 4522564 (N.D. Ill. July 23, 2015) (awarding 33.33% of the fund plus costs); *Abbott v. Lockheed Martin Corp.*, No. 06-701, 2015 WL 4398475 (N.D. Ill. July 17, 2015) (awarding 33.33% of the fund plus costs); *Zolkos v. Scriptfleet, Inc.*, No. 12-8230, 2015 WL 4275540 (N.D. Ill. July 13, 2015) (awarding 33.33% of the fund plus expenses); *Prena v. BMO Fin. Corp.*, No. 15-09175, 2015 WL 2344949 (N.D. Ill. May 15, 2015) (awarding 33.5% of the fund after deducting notice costs); *Bickel v. Sheriff of Whitley Cnty*, No. 08-102, 2015 WL 1402018 (N.D. Ind. March 26, 2015) (awarding 43.7% of the fund); *In re Dairy Farmers of Am., Inc.*, MDL No. 2031, 2015 WL 753946 (N.D. Ill. Feb. 20, 2015) (awarding 33.33% of the fund).

Consequently, the requested fee award falls in line with numerous other settlements approved as reasonable in this Circuit.

### 3. Other Factors Supports the Requested Fee

Beyond comparisons to similar fee awards and agreements, the market price for legal fees "depends in part on the risk of nonpayment a firm agrees to bear, in part on the quality of its performance, in part on the amount of work necessary to resolve the litigation, and in part on the stakes of the case." *Sutton*, 504 F.3d at 693 (quotation and internal marks omitted). Given the outstanding result achieved for the benefit of the Settlement Class in this case, considering the risk of nonpayment to Class Counsel, and extensive resources expended over the years this litigation has been pending, Class Counsel respectfully submit that their requested fee is reasonable and appropriate

9

under the totality of circumstances, and should be approved.

### a. Risk of Non-Payment

As set forth in the motion for preliminary approval, this action involves sharply opposing positions on many issues. First, the Parties' primary disagreement in this case concerns whether ringless voicemails are governed by the TCPA. The Oasis Entities have taken the position that they are not, *see* ECF Doc. 36 at 2 n.1 ("Should this case proceed, Oasis Energy expects to argue in the context of summary judgment that ringless voicemail falls outside the scope of the TCPA. Among other things, ringless voicemail is not a 'call' subject to the statute"). Though Plaintiff disputes this and believes it is incorrect factually and legally, should this Court ultimately agree with the Oasis Entities and grant summary judgment on the issue, the Class will be left with nothing.

Second, the Parties disagree whether the Settlement Class could be certified on a contested motion for class certification. The Oasis Entities maintain, *inter alia*, that individual issues among Settlement Class Members would predominate and preclude class certification, including issues of consent. Plaintiff disagrees but acknowledges that "[c]ourts determine whether issues of individualized consent defeat commonality and predominance in a TCPA cases on a case-by-case basis after evaluating the specific evidence available to prove consent." *Physicians Healthsource, Inc. v. A-S Medication Sols.*, LLC, 318 F.R.D. 712, 725 (N.D. Ill. 2016); *compare, e.g.*, *G.M. Sign, Inc. v. Brink's Mfg. Co.*, No. 09 C 5528, 2011 WL 248511, at *8 (N.D. Ill. Jan. 25, 2011) (denying certification where defendant offered evidence that consent could not be shown with common proof), *and Versteeg v. Bennett, Deloney & Noyes, P.C.*, 271 F.R.D. 668, 674 (D. Wyo. 2011) (declining to certify TCPA class in light of individualized inquiry "into whether each individual gave 'express consent' by providing their wireless number"), *with Savanna Grp., Inc. v. Trynex, Inc.*, No. 10-CV-7995, 2013 WL 66181, at *15 (N.D. Ill. Jan. 4, 2013) (granting class certification

and rejecting argument that questions of consent caused individual issues to predominate because defendant had not offered evidence that any particular class member consented to the faxes at issue), *Zyburo v. NCSPlus, Inc.*, 44 F. Supp. 3d 500, 503 (S.D.N.Y. 2014) (holding defendant failed to make a sufficient showing that individualized issues of consent would predominate where defendant failed to keep records of consent), *and Green v. Serv. Master On Location Servs. Corp.*, No. 07 C 4705, 2009 WL 1810769, at *2 (N.D. Ill. June 22, 2009) (explaining that "the question of consent may rightly be understood as a common question and the possibility that some class members may have consented is not sufficient to defeat class certification"). Thus, if the Oasis Entities were able to present evidence of "prior express written consent" for a portion of the Settlement Class, there would be a risk of the Court denying class certification and the Settlement Class recovering nothing.

The Oasis Entities have also argued that Plaintiff's individual claims fail because the technology at issue is not covered under the relevant statutes and that Plaintiff suffered no damages. Furthermore, they contest, even if Plaintiff's claims survived, he would be unable to certify a class because identification of class members is impossible, individual issues would predominate, and Plaintiff is an inadequate class representative.

Finally, even if Plaintiff were to win class certification, there would remain a risk of losing a jury trial. And even assuming Plaintiff prevailed at trial, any judgment could be reversed on appeal and, even if it were not, any class-wide damages award "would most surely bankrupt the prospective judgment debtor." *In re Capital One*, 80 F. Supp. 3d at 790.

As such, throughout this action, Class Counsel have faced substantial risk that they would receive no compensation despite investing the time and resources necessary to adequately prosecute this case. This risk further supports the requested fee award, as "[c]ontingent fees compensate lawyers for the risk of nonpayment" and "[t]he greater the risk of walking away empty-handed,

11

the higher the award must be to attract competent and energetic counsel." *Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) (*citing Kirchoff v. Flynn*, 786 F.2d 320 (7th Cir. 1986)).

The risk of non-payment is therefore a key consideration in assessing the reasonableness of a requested fee and must be incorporated into any ultimate fee award. *See Florin*, 34 F.3d at 565 ("[A] risk multiplier is not merely available in a common fund case but mandated, if the court finds that counsel had no sure source of compensation for their services.... [T]he need for such an adjustment is particularly acute in class action suits. The lawyers for the class receive no fee if the suit fails, so their entitlement to fees is inescapably contingent.") (quotations and citations omitted); *Sutton*, 504 F.3d at 694 (finding abuse of discretion where court refused to account for the risk of loss on basis that "class actions rarely go to trial and that they all settle[,]" noting that "there is generally some degree of risk that attorneys will receive no fee (or at least not the fee that reflects their efforts) when representing a class because their fee is linked to the success of the suit[;] ... [b]ecause the district court failed to provide for the risk of loss, the possibility exists that Counsel … was undercompensated").

Class Counsel agreed to pursue this action on a contingent fee basis without the benefit of discovery regarding the size or ascertainability of the asserted class. Class Counsel accepted the case despite that extensive class discovery would likely be required, not only with Defendant but also then-unknown third-party marketers and lead generators.

Moreover, even assuming sufficient discovery would be obtained, Class Counsel accepted the risk that the Court might ultimately deny certification or grant certification along with summary judgment for Defendant. *Compare Jamison v. First Credit Servs.*, 290 F.R.D. 92, 107 (N.D. Ill. 2013) (finding issues of consent to predominate in TCPA action) and *Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508, 527 (E.D. Wis. 2014) (same), with *Saf-T-Gard Int'l v. Vanguard Energy Servs.*, No. 12-3671, 2012 WL 6106714 (N.D. Ill. Dec. 6, 2012) (certifying a class in a TCPA action and finding no evidence supported the view that issues of consent would be individualized) and *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 253 (N.D. Ill. 2014) (same).

In light of the considerable risk undertaken by Class Counsel in prosecuting this action on a purely contingent fee basis, the requested fee award is reasonable and should be granted. *In re Capital One*, 80 F. Supp. 3d at 805 (awarding 6% risk premium on top of 30% of fund in TCPA class settlement).

### b. Quality of Performance and Work Invested

The quality of Class Counsel's performance and time invested in fighting through contested motion practice, party and third-party discovery, and adversarial negotiations to achieve a $7,000,000, non-reversionary settlement fund for the benefit of the Settlement Class further supports the requested fee award. *Sutton*, 504 F.3d at 693. The proposed Settlement was reached after many months of litigation and was informed by counsel's thorough review and analysis of significant amounts of documents and ESI produced by the Oasis Entities and several third parties concerning every aspect of this case. Mediation was also hard-fought. While the Parties were able to reach an agreement in principle after extensive negotiations and with the assistance of Judge Mason, the Settlement Agreement was only executed after Class Counsel confirmed the size of the Settlement Class and engaged in other necessary confirmatory discovery.

Class Counsel are experienced in consumer and class action litigation, including under the TCPA. *See* ECF Doc. 62-2, 62-3, 62-4, and 62-5 (Firm Resumes for Class Counsel). Moreover, because they were proceeding on a contingent fee basis, Class Counsel "had a strong incentive to keep expenses at a reasonable level[.]" *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 150 (S.D.N.Y. 2010)). Given the outstanding $7,000,000 settlement obtained for the class, Class Counsel respectfully submit that their experience and the quality and amount of work invested in this action for the benefit of the class supports the requested fee award.

### c. Stakes of the Case

The stakes of the case further support the requested fee award. This case involves hundreds

of thousands of Settlement Class Members who allegedly received unsolicited messages from the Oasis Entities. The amount each Settlement Class Member is individually eligible to recover is low (between $500 and $1,500 per call), and thus individuals are unlikely to file individual lawsuits, especially as each class member only received a small number of these messages. Indeed, individual litigants likely would have to provide proof of calls well beyond what is required here to submit a claim and call records may not be available going back to when the class period begins, making it even less likely that people would file individual lawsuits. A class action is realistically the only way that many individuals would receive any relief. In light of the number of Settlement Class Members and the fact that they likely would not have received any relief without the assistance of Class Counsel, the requested fee is reasonable and should be granted.

### C. The Requested Service Award for Mr. Albrecht Should be Approved

Class Counsel also respectfully request that the Court grant a service award of $7,500 to Plaintiff Kenneth Albrecht for his efforts on behalf of the class. Service awards compensating named plaintiffs for work done on behalf of the class are routinely awarded. Such awards encourage individual plaintiffs to undertake the responsibility of representative lawsuits. *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (recognizing that "because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit"); *Synthroid I*, 264 F.3d at 722 ("Incentive awards are justified when necessary to induce individuals to become named representatives.").

Plaintiff answered discovery, was deposed, and fully participated in this litigation. Mr. Albrecht also worked with Class Counsel to investigate the case, stayed abreast of the proceedings through litigation and settlement, and reviewed and approved the proposed settlement.

The amount requested is comparable to or less than other awards approved by federal courts in Illinois and elsewhere. *See, e.g., Allen v. JPMorgan Chase Bank, NA*, No. 13-8285 (N.D. Ill. Oct.

21, 2015) (Dkt. No. 93 at 6) (Approving $25,000 service award in TCPA class settlement); *Desai v. ADT Security Servs., Inc*., No. 11-1925, DE 243 ¶ 20 (N.D. Ill. Feb. 27, 2013) (awarding $30,000 service awards in TCPA class settlement); *Landsman & Funk, P.C. v. Skinder-Strauss Assocs*., No. 08CV3610 CLW, 2015 WL 2383358, at *9 (D.N.J. May 18, 2015), *aff'd*, 639 F. App'x 880 (3d Cir. 2016) (awarding $10,000 to class representative in junk fax case); *Lees v. Anthem Ins. Companies Inc*., No. 4:13CV1411 SNLJ, 2015 WL 3645208, at *4 (E.D. Mo. June 10, 2015) (awarding $10,000 to class representative in case involving nonconsensual calls to cell phones); *Am. Copper & Brass, Inc. v. Lake City Indus. Prod., Inc*., No. 1:09-CV-1162, 2016 WL 6272094, at *3 (W.D. Mich. Mar. 1, 2016) (approving a $10,000 service award where Plaintiff was deposed, reviewed documents, and assisted counsel); *Ikuseghan v. Multicare Health Sys*., No. C14-5539 BHS, 2016 WL 4363198, at *3 (W.D. Wash. Aug. 16, 2016) (finding an service award of $15,000 to be reasonable); *Hageman v. AT & T Mobility* LLC, No. CV 13-50-BLG-RWA, 2015 WL 9855925, at *4 (D. Mont. Feb. 11, 2015) (approving $20,000 service award in TCPA class settlement); *Cook*, 142 F.3d at 1016 (affirming $25,000 service award to plaintiff); *Heekin v. Anthem, Inc.*, No. 05-01908, 2012 WL 5878032, *1 (S.D. Ind. Nov. 20, 2012) (approving $25,000 service award to lead class plaintiff over objection); *Will v. Gen. Dynamics Corp.*, No. 06-698, 2010 WL 4818174, *4 (S.D. Ill. Nov. 22, 2010) (awarding $25,000 each to three named plaintiffs); *Benzion v. Vivint, Inc.*, No. 12-61826, DE 201 (S.D. Fla. Feb. 23, 2015) (awarding $20,000 service award in TCPA class settlement).

Plaintiff's requested service award of $7,500 is therefore reasonable and should be approved.

V.  CONCLUSION

WHEREFORE, Class Counsel respectfully request that the Court grant this unopposed motion and award Class Counsel $2,333,310 in fees and expenses and approve a service award to Plaintiff Albrecht in the amount of $7,500.

Dated: November 22, 2019                    Respectfully submitted,

By: /s/ Katrina Carroll

Katrina Carroll, Esq.
kcarroll@carlsonlynch.com
Kyle A. Shamberg, Esq.
kshamberg@carlsonlynch.com
**CARLSON LYNCH, LLP**
111 W. Washington Street, Suite 1240
Chicago, Illinois
60602
Phone No. (312) 750-1265
Fax No. (312) 212-5919

**SHAMIS & GENTILE, P.A.**
Andrew J. Shamis
ashamis@shamisgentile.com
14 NE 1st Avenue, Suite 400
Miami, FL 33132
Telephone: 305-479-2299
Fax: 786-623-0915

**EDELSBERG LAW**
20900 NE 30th Ave #417
Aventura, FL 33180
scott@edelsberglaw.com
305-975-3320

**HIRALDO P.A.**
Manuel S. Hiraldo
Pro Hac Vice
401 E. Las Olas Boulevard Suite 1400
Ft. Lauderdale, FL 33301
mhiraldo@hiraldolaw.com
Telephone: 954-400-4713

*Counsel for Plaintiff and the Settlement Class*