**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KENNETH ALBRECHT, on behalf of himself and all others similarly situated, | )<br>)<br>) |
| Plaintiff, | )<br>) Case No. 1:18-cv-1061 |
| v. | )<br>) Hon. Harry D. Leinenweber |
| OASIS POWER, LLC doing business as OASIS ENERGY, | )<br>)<br>) |
| Defendant. | ) |

**PLAINTIFF'S UNOPPOSED MOTION FOR
<u>FINAL APPROVAL OF CLASS ACTION SETTLEMENT</u>**

I.  **INTRODUCTION**

Plaintiff Kenneth Albrecht alleges Defendant Oasis Power, LLC and its related entities (collectively the "Defendants") transmitted prerecorded advertising messages to him and the Settlement Class[1] members' wireless telephone numbers without "prior express written consent" in alleged violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. After extensive litigation, negotiation, and mediation before the Hon. Michael Mason (Ret.), the Parties agreed upon the principal terms of the proposed Settlement, which they later memorialized in the Settlement Agreement. *See* ECF Doc. 62-1 (Settlement Agreement).

On September 24, 2019, this Court preliminarily approved the Settlement, finding the Settlement was fair, just, reasonable and adequate, subject to further consideration at a final approval hearing. ECF Doc. 69. The Court also conditionally certified the Settlement Class, ordered that Notice be disseminated, set an opt out and objection deadline of December 7, 2019 and a Final Approval Hearing for February 11, 2020. *Id.* No class member objected to the Settlement and only two opted out. For the reasons set forth below, the Court should grant final approval of the Settlement.

II.  **BACKGROUND**

a.  **History of the Litigation and Discovery**

Plaintiff filed his class action complaint in February 2018. ECF Doc. 1. After amending once as a matter of right, Defendant Oasis moved to dismiss the FAC, arguing that Plaintiff lacked standing under Fed. R. Civ. P. 12(b)(1) because he had not suffered any cognizable injury in fact from his receipt of ringless voicemails, and to stay discovery during that motion's pendency. ECF

---

[1] Capitalized terms have the same meanings as identified in the Settlement Agreement unless otherwise noted.

1

Docs. 31, 36. The Court soon thereafter denied the motion to stay, permitting discovery to proceed in the usual course. ECF Doc. 38.

The Court then denied the motion to dismiss in October 2018, ECF Doc. 48, finding that the TCPA "establishes substantive, not procedural, rights to be free from telemarketing calls consumers have not consented to receive," and both the "history and the judgment of Congress suggest that violation of this substantive right is sufficient to constitute a concrete, de facto injury." *Id.* The Court therefore concluded that Plaintiff's allegations of invasion of privacy, annoyance, and harassment were sufficient to establish standing under the TCPA. *Id.*

In the meantime, from May 2018 until June 2019, the Parties engaged in wide-ranging discovery, serving and responding to written discovery, meeting and conferring regarding same, deposing Defendant's 30(b)(6) representative and Plaintiff in his capacity as class representative, and serving multiple subpoenas on the third party entities that Defendant hired to conduct the marketing campaign as well as pursuing motions to compel those entities' noncompliance therewith.

### b. Settlement Discussions, Mediation and Confirmatory Discovery

In June 2019, the Parties agreed to attend private mediation in an attempt to resolve this case on behalf of the Settlement Class. The Parties proposed various different mediators and ultimately scheduled mediation for June 25, 2019 in Chicago, Illinois before the Hon. Michael Mason, a well-respected and experienced JAMS mediator and former U.S. Magistrate Judge for the Northern District of Illinois. The Parties exchanged confidential mediation statements thoroughly articulating their respective positions on each of the key legal issues relating to liability, class certification and damages exposure, and Plaintiff provided a proposed term sheet ahead of mediation.

At mediation, the Parties discussed their competing views on various issues, including the

relief to which the Settlement Class is potentially entitled and the prospects of class certification and eventually began exchanging counterproposals on key aspects of the Settlement. The Parties' negotiations were at all times highly adversarial and at arm's length. After almost twelve hours of mediation, the Parties reached an agreement on the principal terms of the Settlement and signed a binding term sheet, which the Parties agreed would be used to memorialize the Settlement Agreement and select a Settlement Administrator.

## III. TERMS OF THE SETTLEMENT

The Settlement Agreement contains the following key terms:

### a. Class Definition

Pursuant to the Settlement Agreement, Plaintiff requests in this Motion that the Court provisionally certify the following Settlement Class: all individuals within the United States (i) who were sent a prerecorded message, also referred to a ringless voicemail (ii) on his or her telephone (iii) by or on behalf of Defendants advertising Defendants' goods and services during the Class Period. Specifically excluded from the Settlement Class are Defendants and their affiliates, employees, officers, directors, agents, representatives and their immediate family members; class counsel and the judge and magistrate judge who have presided over the Action and their immediate family members. SA § 2.34.

### b. Monetary Relief

Defendants have agreed to pay, on a non-reversionary basis, cash in the amount of $7,000,000.00 to create the Settlement Fund, for the benefit of Settlement Class Members, and which will be used to pay all Settlement costs, including without limitation the Cash Awards, Notice and Administrative Costs, any Attorneys' Fee Award and Service Award awarded by the Court, and will be in full satisfaction of all of Defendants' monetary obligations under the

Settlement and Settlement Agreement. *Id.* § 4.01.

After Notice and Administration Costs and any Attorneys' Fee Award and Service Award have been paid from the Settlement Fund, each Settlement Class Member who submits a Valid Claim will receive a pro rata share of the remainder of the Available Cash Award Total. *Id.* § 4.02; *see also id.* §§ 4.03-4.06 (timing of and process for payment distribution). Regardless of the number of Valid Claims submitted, no portion of the Settlement Fund shall be returned or refunded to Defendants. *Id.* § 4.05

### c. Notice and Settlement Administration Costs

Defendants have agreed to pay from the Settlement Fund all Notice and Administration Costs to the Settlement Administrator. *Id.* § 4.01. The total Notice and Administration Costs to date are $589,113, with a total anticipated cost upon completion of all claims processing activities of $789,000. *See* Declaration of Cameron Azari (attached hereto as **Exhibit A**).

### d. Service Award for Class Representative and Attorneys' Fees for Class Counsel

Defendants have agreed to pay from the Settlement Fund, subject to Court approval, a reasonable Service Award to Plaintiff in recognition of the time and effort he expended in pursuing this action and in fulfilling his obligations and responsibilities as class representative. SA § 5.01. Defendants have also agreed to pay from the Settlement Fund a reasonable Attorneys' Fee Award to proposed Class Counsel, as may be awarded by the Court. *Id.* § 5.02

On November 22, 2019, Plaintiff filed a motion seeking a $7,500 Service Award and $2,333,310 (or one third of the total settlement) in attorneys fees and costs. ECF Doc. 70. The Settlement Agreement is not contingent on the amount of any Service Award or Attorneys' Fee Award. SA § 5.03.

### e. Objections and Opt-Out Rights

Any Settlement Class Member who intended to object or opt out of the Settlement was

4

required to do so on or before December 7, 2019. ECF Doc. 69. ***No*** class member has objected to the Settlement and only two have opted out.

IV. **ARGUMENT**

    A. **The Settlement Class Should Be Certified for Settlement Purposes**

The proposed Settlement Class is appropriate for certification pursuant to Rule 23(a) and that it fits into one of the three subsections of Rule 23(b). *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 621 (1997); *In re AT&T Mobility*, 270 F.R.D. at 340-345 (citations omitted); *see also* Manual for Complex Litigation § 21.632 (4th ed. 2004). The Court should certify the Settlement Class – defined as all individuals within the United States (i) who were sent a prerecorded message, also referred to a ringless voicemail (ii) on his or her telephone (iii) by or on behalf of Defendants advertising Defendants' goods and services during the Class Period – under Rule 23(a) and Rule 23(b)(3).

        **1.** **The Requirements Of Rule 23(a) Are Satisfied**

Rule 23(a) requires that (a) the proposed settlement is so numerous that joinder of all individual class members is impracticable (numerosity); (b) there are questions of law or fact common to the proposed settlement class (commonality); (c) plaintiff's claims are typical of those of the class (typicality), and (d) the plaintiff and class counsel will adequately protect the interests of the class (adequacy). Fed. R. Civ. P. 23(a)(1)–(4); *In re AT & T*, 270 F.R.D. at 340-44. The Settlement Class satisfies each of these requirements.

        a. **Numerosity**

The first requirement of Rule 23(a) is that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Settlement Class consists of millions of individuals dispersed throughout the United States. Joinder of all Settlement Class Members is obviously impractical. *See McCabe v. Crawford & Co.,* 210 F.R.D. 631, 643 (N.D. Ill. 2002) (forty

or more class members is generally sufficient to establish numerosity). Accordingly, the numerosity requirement of Rule 23(a) is satisfied.

### b. Commonality

The second requirement is that "there are questions of law or fact common to the class." Rule 23(a)(2). The commonality requirement is satisfied where a plaintiff asserts claims that "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011).

Many questions of law and fact are common to the Settlement Class in this case, including whether Defendants' ringless voicemails violate the TCPA, whether Defendants' messages are "advertisements" under the TCPA, whether Defendants obtained express written consent, and whether Defendants' violations were willful or knowing. *See Parker v. Risk Mgmt. Alternatives, Inc.*, 206 F.R.D. 211, 213 (N.D. Ill. 2002) ("[A] common nucleus of operative fact is usually enough to satisfy the [commonality] requirement."). Accordingly, the commonality requirement of Rule 23(a) is satisfied.

### c. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The typicality requirement is not demanding." *Fogarazzao v. Lehman Bros., Inc.*, 232 F.R.D. 176, 180 (S.D.N.Y. 2005).

Plaintiff's claims are typical of the claims of Settlement Class Members because Plaintiff's claims arise out of the same "event, practice or course of conduct that gives rise to the claim[s] of the other class members" and "are based on the same legal theory." *Parker*, 206 F.R.D. at 213. Plaintiff and each Settlement Class Member received one or more ringless voicemail messages

6

from Defendants sent as part of the same marketing campaign. Moreover, Plaintiff and the putative Settlement Class members all seek statutory damages. Accordingly, the typicality requirement of Rule 23(a) is satisfied.

### d. Adequacy of Representation

The fourth and final Rule 23(a) requirement is "adequacy of representation," Fed. R. Civ. P. 23(a)(4), which has two components: (1) "the representatives must not possess interests which are antagonistic to the interests of the class;" and (2) "the representatives' counsel must be qualified, experienced and generally able to conduct the proposed litigation." *CV Reit, Inc. v. Levy*, 144 F.R.D. 690, 698 (S.D. Fla. 1992) (citation omitted).

The first component is satisfied because Plaintiff's interests in this litigation are aligned with, and not antagonistic to, those of the Settlement Class. *See G.M. Sign,* 2009 U.S. Dist. LEXIS 73869, at *15-16; *Zyburo*, 44 F. Supp. 3d at 503 (holding that "the adequacy requirement is satisfied with respect to the lead plaintiff in this kind of consumer case unless plaintiff's interests are antagonistic to the interest of other members of the class") (quotation omitted). Plaintiff challenges the same alleged unlawful conduct and seeks the same monetary relief for himself and all Settlement Class Members. Plaintiff retained counsel, assisted with the litigation, and vigorously prosecuted the case on behalf of the Settlement Class.

The second component of Rule 23(a)(4) is satisfied because Plaintiff hired qualified and competent counsel who are experienced in class actions generally and TCPA litigation in particular. *See* Dkt. No. 62-2 (Class Counsel Firm Resumes). Plaintiff's counsel have successfully investigated, commenced, and prosecuted many complex cases and class actions, including the instant action. *Id.* Accordingly, the adequacy of representation requirement of Rule 23(a) is satisfied.

### 2. The Requirements Of Rule 23(b)(3) Are Satisfied

Because Plaintiff seeks certification under Rule 23(b)(3), Plaintiff must additionally show (a) that common questions of law or fact predominate over questions affecting only individual class members (predominance); and (b) that a class action is superior to other available methods of resolving the controversy (superiority). Fed. R. Civ. P. 23(b)(3); *In re AT&T Mobility*, 270 F.R.D. at 344-45. Both requirements are easily satisfied by the proposed Settlement Class.

#### a. Common Questions Predominate

The predominance requirement of Rule 23(b)(3) is satisfied because common questions comprise a substantial aspect of the case and can be resolved for all Settlement Class members in a single adjudication. *See Roach v. T.L Cannon Corp.*, 773 F.3d 401, 405 (2d Cir. 2015) (predominance is satisfied "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof").

This entire case is focused on Defendants' alleged common practice of using third-party technology to transmit the same advertising messages to cellular telephone numbers provided by TMC. *See, e.g., Sadowski v. Med1 Online, LLC*, No. 07 C 2973, 2008 U.S. Dist. LEXIS 41766, *13 (N.D. Ill. May 27, 2008) (finding common issues such as "how numbers were generated from Defendant's database and whether Defendant's actions . . . violated the TCPA" to predominate, and that the issue of consent might be resolved through common proof such as "the source of the numbers" and "how Defendant selected who was to receive the [ ] faxes").

Thus, the central questions in this case – whether Defendants sent advertising messages to cellular phones without "express written consent" – are capable of resolution on a class-wide basis by looking to Defendants' records. Because Defendants used the same technology to transmit all of the ringless voicemail messages, whether that technology violates the TCPA is a question

8

capable of resolution on a class-wide basis with common proof. Moreover, unlike many TCPA actions, individualized issues of consent do not predominate. Whether the messages sent by Defendants are "advertisements" within the meaning of the TCPA (they clearly are) is a question of law that can be resolved in one stroke for the entire Settlement Class – and, if answered in the affirmative, would subject Defendants to the heightened requirement of "prior express <u>written</u> consent" for the entire Settlement Class. In any event, Defendants have the burden to plead and produce evidence of consent for entire Settlement Class, *see Johansen v. GVN Michigan, Inc.*, No. 1:15-cv-00912, 2015 WL 3823036, at *1 (June 18, 2015) (noting burden is on the defendant to plead consent affirmative defense), and thus far Defendants have produced no evidence of such consent for any Settlement Class Member.

Because there are no apparent issues requiring individualized proof, the predominance requirement is satisfied for purposes of preliminary approval.

### b.  Class Treatment of Plaintiff's Claims is Superior

Rule 23(b)(3) also requires that a class action be superior to other available methods for adjudicating the controversy. "The superiority requirement is often met where class members' claims would be too small to justify individual suits, and a class action would save litigation costs by permitting the parties to assert their claims and defenses in a single proceeding." *Kaye v. Amicus Mediation & Arbitration Group, Inc.*, 300 F.R.D. 67, 81 (D. Conn. 2014); *see also Amchem,* 521 U.S. at 617 (noting that "the Advisory Committee had dominantly in mind vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all").

A class action is the superior method for the fair and efficient adjudication of these claims. Plaintiff's claims are shared by millions of other consumers, each of whom received at least one ringless voicemail from Defendants via the same dialing technology. The resolution of all

claims of all Settlement Class Members in a single proceeding promotes judicial efficiency and avoids inconsistent decisions. *See Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 155 (1982) (noting "the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical fashion under Rule 23"). Further, the statutory damages available under the TCPA ($500.00 per violation, or $1,500.00 if the violation is willful) are small in comparison to the costs of litigation. As a result, it is unlikely any Settlement Class Member would be willing or able to pursue relief on an individual basis.

Accordingly, the superiority requirement is satisfied for purposes of preliminary approval. The Court should provisionally certify the Settlement Class.

### B. The Settlement Should Be Approved

Rule 23(e) provides that a court may approve a proposed class settlement "on a finding that it is fair, reasonable, and adequate." *See* Fed. R. Civ. P. 23(e)(2); *see also Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006); *Armstrong*, 616 F.2d at 314. At the preliminary approval stage, the district court need only assess whether the proposed settlement falls "within the range of possible approval," in order to "ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Id.*

While "[f]ederal courts naturally favor the settlement of class action litigation," *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 345 (N.D. Ill. 2010) (quoting *Isby*, 75 F.3d at 1196), district courts must nonetheless consider the following four factors to determine whether a proposed settlement is fair, reasonable and adequate: (1) the strength of the plaintiff's case compared to the amount of the settlement offer, (2) the length, complexity, and expense of further litigation, (3) the opinion of competent counsel, and (4) the stage of the proceedings and

amount of discovery completed. *See Synfuel*, 463 F.3d at 653 (citing *Isby*, 75 F.3d at 1199). "Although this standard and the factors used to measure it are ultimately questions for the fairness hearing that comes after a court finds that a proposed settlement is within approval range, a more summary version of the same inquiry takes place at the preliminary phase," *Kessler v. Am. Resorts International's Holiday Network, Ltd.*, No. 05 C 5944, 2007 WL 4105204, at *5 (N.D. Ill. Nov. 14, 2007) (citing *Armstrong*, 616 F.2d at 314), under which the facts are viewed "in the light most favorable to the settlement," *Isby*, 75 F.3d at 1199.

Each of these four factors weighs in favor of finding the proposed Settlement fair, reasonable and adequate, warranting its final approval. This is especially true considering that none of the members of the Class have objected to the Settlement, and only two have opted out.

### 1. The Settlement Provides Substantial Relief to the Settlement Class, Particularly Given the Risks Posed by Continued Litigation

"The most important factor relevant to the fairness of a class action settlement is the first one listed: the strength of the plaintiff's case on the merits balanced against the amount offered in the settlement." *Synfuel*, 463 F.3d at 653 (internal quotes and citations omitted). "Because the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to the plaintiffs." *In re AT&T Mobility*, 270 F.R.D. at 347 (citations omitted).

The amount of the Settlement – $7 million – is substantial. Should the Settlement be approved, each Settlement Class Member who submits a Valid Claim will receive a Cash Award. And while Plaintiff continues to believe that his claims against Defendants have merit, there are legal uncertainties associated with continued litigation that pose substantial risk of non-recovery to the Settlement Class. *See In re Southwest Airlines Voucher Litig.*, No. 11-cv- 8176, 2013 WL 4510197, at *7 (N.D. Ill. Aug. 26, 2013) ("In considering the strength of plaintiffs' case, legal

uncertainties at the time of settlement favor approval.").

First, the Parties' primary disagreement in this case concerns whether ringless voicemails are governed by the TCPA. Defendants have taken the position that they are not, *see* ECF Doc. 36 at 2 n.1 ("Should this case proceed, Oasis Energy expects to argue in the context of summary judgment that ringless voicemail falls outside the scope of the TCPA. Among other things, ringless voicemail is not a "call" subject to the statute"). Though Plaintiff disagrees with Defendants' position and believes it is incorrect factually and legally, should this Court ultimately agree with Defendants and grant summary judgment on the issue, the Class will be left with nothing.

Second, the Parties disagree whether the Settlement Class could be certified on a contested motion for class certification filed by Plaintiff. Defendants maintain, *inter alia*, that individual issues among Settlement Class Members would predominate and preclude class certification, including issues of consent. Plaintiff disagrees but acknowledges that "[c]ourts determine whether issues of individualized consent defeat commonality and predominance in a TCPA cases on a case-by-case basis after evaluating the specific evidence available to prove consent." *Physicians Healthsource, Inc. v. A-S Medication Sols.*, LLC, 318 F.R.D. 712, 725 (N.D. Ill. 2016). Thus, if Defendants were able to present evidence of "prior express written consent" for a portion of the Settlement Class, there would be a risk of the Court denying class certification and the Settlement Class recovering nothing.

Finally, even if Plaintiff were to win class certification, there would remain a risk of losing a jury trial. And even assuming Plaintiff prevailed at trial, any judgment could be reversed on appeal and, even if it were not, any class-wide damages award "would most surely bankrupt the prospective judgment debtor." *In re Capital One*, 80 F. Supp. 3d at 790. A pyrrhic victory for the Settlement Class at trial is in no one's interest.

### 2. Continued Litigation Would Be Complex, Costly and Lengthy

Preliminary approval is also favored where "[s]ettlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011).

If this litigation were to continue, it would be lengthy and very expensive and involve extensive motion practice, including a motion for class certification (and possibly a motion for decertification), motions for summary judgment and various pretrial motions, as well as the retention of experts, preparation of expert reports, and expert depositions.

For example, Plaintiff would need to hire an expert to identify members of the Settlement Class based on call records produced in this case, an expensive process (and one Defendants are likely to challenge with their own experts) that would itself take several months. The case would probably not go to trial for over a year. And even if the Settlement Class recovered a judgment at trial in excess of the $7.0 million provided by the Settlement, post-trial motions and the appellate process would deprive them of any recovery for years, and possibly forever in the event of a reversal.

Rather than embarking on years of protracted and uncertain litigation, Plaintiff and his counsel negotiated a Settlement that provides immediate, certain, and *meaningful* relief to all Settlement Class Members. *See Schulte*, 805 F. Supp. 2d at 586. Accordingly, the second factor weighs in favor of finding the Settlement fair, reasonable and adequate. *See Borcea v. Carnival Corp.*, 238 F.R.D. 664, 674 (S.D. Fla. 2006) (noting that " [i]t has been held proper to take the bird in the hand instead of a prospective flock in the bush").

### 3. Proposed Class Counsel Is Competent, Well-Informed and Experienced, and Strongly Endorses the Settlement

The third factor examines the opinion of competent counsel as to whether a proposed

settlement is fair, reasonable, and adequate. *Isby*, 75 F.3d at 1200. In assessing the qualifications of counsel under this factor, a court may rely upon affidavits submitted by class counsel as well as its own observations of class counsel during the litigation. *Id.*

Plaintiff's counsel and proposed Class Counsel, Katrina Carroll of Carlson Lynch LLP, Scott Edelsberg of Edelsberg Law PA, Andrew Shamis of Shamis & Gentile PA and Manuel Hiraldo of Hiraldo, P.A., have significant experience in consumer privacy class action litigation, and have been appointed and served as class counsel in similar TCPA cases. *See* ECF Doc. 62-2. Class Counsel strongly endorse this Settlement, which they negotiated at arm's length before an experienced mediator.

### 4. The Settlement Was Reached After Significant Litigation, Wide-Ranging Discovery and Arm's Length Negotiations

The last factor concerns the stage of the proceedings and amount of discovery completed at the time the settlement is reached. *Synfuel*, 463 F.3d at 653. This factor is significant because "it indicates how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 C 2898, 2011 WL 3290302 (N.D. Ill. July 26, 2011) (quoting *Armstrong,* 616 F.2d at 325) (internal quotations omitted).

The proposed Settlement was reached after nearly a year of litigation and was informed by counsel's thorough review and analysis of significant amounts of documents and ESI produced by Defendants and several third parties, concerning every aspect of this case. Armed with this information, Plaintiff and his counsel had "a clear view of the strengths and weaknesses" of the case and were in a strong position to negotiate a fair, reasonable, and adequate settlement on behalf of the Settlement Class at mediation, which they have done. *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985), *aff'd* 798 F.2d 35 (2d Cir. 1986).

Accordingly, the final factor weighs in favor of finding the Settlement fair, reasonable and

adequate.

### C. The Court-Approved Notice Plan Satisfied Due Process

The Settlement Agreement required the Settlement Administrator to implement a comprehensive Settlement Class Notice Program for providing the Class Notice to Settlement Class Members and otherwise notifying the Settlement Class of the Settlement and the Settlement Agreement. *Id.* § 8. It has done this, including through highly visible notice placements in *Parade*, *People* and *Sports Illustrated*. Publication Notice appeared once as a ½-page ad unit in *Parade* and a full-page ad unit in *People* and *Sports Illustrated*. For all three publications, the Publication Notice was published as a regional insertion in the 11 targeted states (CT, IL, MA, MD, ME, MI, NH, NJ, NY, OH and PA). *See* Fed. R. Civ. P. 23(e)(1) (calling for notice to be provided in a "reasonable manner to all class members who would be bound by the proposal"); *In re Northfield*, 2012 WL 366852, at *7. The Administrator also employed banner advertisements through Google Display Network, Verizon Media (Yahoo!) Ad Network, and Facebook, creating over 300,000,000 unique impressions. Further information regarding the comprehensive Notice that was sent out to Class Members is further detailed in the Azari Declaration (Ex. A hereto). Taken together, these forms of notice reached more than 80% of the Settlement Class.[2] *Id.*

Accordingly, the form and method of notice given to class members satisfies all the legal requirements of Rule 23, as well as the constitutional due process requirements.

---

[2] The Federal Judicial Center's Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide recommends a target of at least 70% reach for class action notice campaigns. Courts have used this figure to determine the success of notice campaigns. *Swift v. Direct Buy, Inc*., No. 11-cv-401, 2013 WL 5770633, at *3 (N.D. In. Oct. 24, 2013) ("The Federal Judicial Center's checklist on class notice instructs that class notice should strive to reach between 70% and 95% of the class.")

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an order granting final approval of the Settlement.

Dated: January 27, 2020

Respectfully submitted,

*By: /s/ Katrina Carroll*

Katrina Carroll, Esq.
kcarroll@carlsonlynch.com
Kyle A. Shamberg, Esq.
kshamberg@carlsonlynch.com
**CARLSON LYNCH, LLP**
111 W. Washington Street, Suite 1240
Chicago, Illinois
60602
Phone No. (312) 750-1265
Fax No. (312) 212-5919

**SHAMIS & GENTILE, P.A.**
Andrew J. Shamis
ashamis@shamisgentile.com
14 NE 1st Avenue, Suite 400
Miami, FL 33132
Telephone: 305-479-2299
Fax: 786-623-0915

**EDELSBERG LAW**
20900 NE 30th Ave #417
Aventura, FL 33180
scott@edelsberglaw.com
305-975-3320

**HIRALDO P.A.**
Manuel S. Hiraldo
Pro Hac Vice
401 E. Las Olas Boulevard Suite 1400
Ft. Lauderdale, FL 33301
mhiraldo@hiraldolaw.com
Telephone: 954-400-4713

*Counsel for Plaintiff and the Putative Class*